IN THE DISTRICT COURT OF LINCOLN COUNTY
STATE OF OKLAHOMA

THE CITY OF PRAGUE, OKLAHOMA
and PRAGUE PUBLIC WORKS AUTHORITY,

         Plaintiffs,

vs.

CAH ACQUISITION COMPANY 7, LLC;
HMC/CAH CONSOLIDATED, INC.;
RURAL COMMUNITY HOSPITALS OF
AMERICA, LLC; EMPOWER H.M.S.; JORGE A.
PEREZ; WCS CORPORATION, INC., successor-
by-merger to CPP WOUND CARE #24; LINCOLN
COUNTY TREASURER AND BOARD OF
COUNTY COMMISSIONERS; and
JOHN DOES 1-10,

         Defendants.

Case No. CJ-2019- 13

FILED JAN 16 2019 CINDY KIRBY COURT CLERK LINCOLN COUNTY, OKLAHOMA

## PLAINTIFFS' EMERGENCY APPLICATION FOR APPOINTMENT OF RECEIVER AND SUPPORTING BRIEF

Plaintiffs, the City of Prague, Oklahoma, and Prague Public Works Authority, hereby pray that this Court appoint a receiver for the real property and facility described in the Brief below, for the reasons more fully set forth therein.

### BRIEF

**A.  Facts.**

*Parties:*

1. City of Prague, Oklahoma ("Prague"), is an Oklahoma municipal governmental corporation, created pursuant to Title 11 O.S. § 1-101 *et seq.*

2. Prague is the owner of the real property upon which the Prague Community Hospital (the "Hospital") sits, and the building within which the Hospital operates.

3. Plaintiff Prague Public Works Authority ("PPWA") is an Oklahoma public trust, created pursuant to Title 60 O.S. § 176 *et seq.*


EXHIBIT 8

4. Defendant CAH Acquisition Company 7, LLC ("CAH 7") is a Delaware limited liability company that is registered with the Oklahoma Secretary of State to do business in Oklahoma. CAH 7 entered into a Lease Agreement with Prague and PPWA for the lease of the facility and real property known as the Prague Community Hospital, located at 1322 Klabzuba, Prague, Oklahoma, 74864 (the "Hospital Premises").

5. Defendant HMC/CAH Consolidated, Inc. ("HMC") is a Delaware corporation with its principal place of business at 1100 Main Street, Suite 2350, in Kansas City, Missouri, 64105 and is the sole member of CAH 7. Upon information and belief, as well as Paragraph 1.12 of the Lease Agreement, HMC owns, controls, and operates CAH 7.

6. Defendant Rural Community Hospital of America, LLC ("RCHA") is believed to be a single-member West Virginia limited liability company with its principal office in Kansas City, Missouri. RCHA is the company that manages the Hospital. (*See* Lease Agreement, Paragraph 1.10.)

7. Defendant Empower H.M.S. ("Empower") a Florida limited liability company, provides a range of health care services in the United States, including the conduct of business in Oklahoma.

8. Defendant Jorge Perez is a managing director of HMC, and is in direct and constant control of CAH 7, HMC RCHA, and Empower.

*History of Prague Community Hospital:*

9. The Hospital is a medical facility that provides the City of Prague and surrounding areas with essential health care services, including diagnostic and therapeutic services; 24-hour emergency care; convenient and specialized outpatient resources; laboratory, physical rehabilitation, acute care, swing bed, cardiology, and other services.

10. Prior to its relationship with CAH 7, Prague and PPWA leased the Hospital Premises to Prague Healthcare Alliance ("PHA").

11. In turn, PHA operated the Hospital for the health and benefit of the City of Prague and the surrounding areas, providing care for the sick, aged, and infirm.

12. On October 13, 2008, CAH 7 purchased the assets used by PHA to operate the Hospital, and assumed PHA's then existing lease with Prague and PPWA.

13. To ensure the continued operation of the Hospital, on December 31, 2013, Prague and PPWA executed a new lease agreement with CAH 7 (the "Lease Agreement") that, together with any amendments or extensions, terminated on December 31, 2018.

14. CAH 7 in turn may have contracted with Defendant Empower to manage the Hospital.

*Defendants have jeopardized the viability of the Hospital:*

15. The Lease Agreement requires CAH 7, HMC, RCHA, and Empower to maintain the Hospital as an ongoing, fully functional "critical access hospital in accordance with a license issued by the Oklahoma Department of Health."

16. CAH 7, HMC, RCHA and Empower have failed to timely and fully pay the Hospital's employees their wages and salaries as they become due, threatening the stability of the Hospital and its ability to be maintained as a going concern.

17. CAH 7, HMC, RCHA and Empower have failed to timely and fully pay the Hospital's vendors' claims as they become due, threatening the stability of the Hospital and its ability to be maintained as a going concern.

18. If CAH 7, HMC, RCHA or Empower were to shut the Hospital down, the Prague Hospital License (defined below) would be forfeited, and the Hospital would have to cease all

operations until a new license could be obtained. This could pose an insurmountable problem blocking the reopening of the Hospital.

19. CAH 7, HMC, RCHA and Empower have failed to pay their expenses and debts as they become due in the ordinary course of business. Thus, they are by definition insolvent, or are in imminent danger of insolvency.

20. CAH 7, HMC, RCHA and Empower are improperly diverting revenue sources away from employees, providers, vendors and creditors for the benefit and use of Perez.

21. Additionally, it is believed that CAH 7, HMC, RCHA and/or Empower are to receive a very large reimbursement payment from Medicare and/or Medicaid sources very shortly. The payment(s) will be made to reimburse the Hospital for previously incurred expenses for labor, goods, services, etc.

22. Plaintiffs believe that Perez, CAH 7, HMC, RCHA and Empower intend to keep the Hospital nominally open just long enough to receive the large payment(s) from Medicare and/or Medicaid sources and abscond with the money, leaving the Hospital closed and the citizens of Prague without health care.

23. Perez, CAH 7, HMC, RCHA and Empower have created an immediate threat to the health and safety of the Hospital's current patients and to those persons who might urgently need the Hospital's medical care and services in the future. This situation creates immediate and irreparable injury to Plaintiffs and jeopardizes patient care.

*Plaintiffs' immediate need for a Receiver:*

24. Plaintiffs are entitled to evict CAH 7, HMC, RCHA and Empower by reason of their breaches of the Lease Agreement, and by virtue of the fact that these Defendants allowed the

Lease Agreement to expire on December 31, 2018 without even inquiring about an extension of the Lease Agreement.

25. However, a sudden eviction or other closure of the Hospital will severely disrupt, and could entirely preclude, the ability of the Hospital to care for the community.

26. Moreover, every owner of a hospital facility in Oklahoma is required to obtain a license to operate that particular facility from the Oklahoma Department of Health ("ODH").

27. Each license, therefore, is tied to a specific location.

28. For example, CAH 7 presumably owns the ODH license to operate the Hospital located in Prague (the "Prague Hospital License").

29. However, CAH 7 cannot use the Prague Hospital License to operate a medical facility at any other location.

30. If CAH 7, HMC, RCHA, Empower, or Perez were to shut the Hospital down, the Prague Hospital License would be forfeited, and the Hospital would have to cease all operations until a new license could be obtained. This could pose an insurmountable problem blocking the reopening of the Hospital.

31. Moreover, if CAH 7, HMC, RCHA, Empower, or Perez were allowed to abscond with the anticipated large reimbursement payment from Medicare and/or Medicaid, or any other payor reimbursement or payment, no funds would be left to operate the Hospital.

32. In order to preserve the Prague Hospital License and therefore the ongoing operation and viability of the Hospital, and in order to ensure proper distribution of CMS reimbursements and other revenues, Plaintiffs are entitled to the immediate appointment of a receiver to take possession and control of (i) the Prague Hospital License (ii) CAH 7, (iii) RCHA, (iv) HMC, (v) Empower, and (vi) any other entity controlling the Hospital, as well as (vi) all

financial accounts used to receive revenues of the Hospital, whether owned by CAH 7, HMC, RCHA, Empower or any other person or entity.

33. In light of the above, Plaintiffs urgently need a receiver to facilitate the transition of the critical access hospital operations conducted by the Hospital to a new operator, lessee or buyer of the Hospital Premises to preserve health care for Prague and the surrounding community.

34. Further, a receiver is urgently needed to take over operations of the Hospital, and to manage the Hospital under the Prague Hospital License and Medicare and Medicaid certifications issued to and in the name of the Defendants, pending further order of the Court or completion of this proceeding.

35. To ensure the continued viability of the Prague Hospital License, the Court should also direct ODH to transfer the Prague Hospital License into the name of the receiver.

36. Additionally, Perez, CAH 7, HMC, RCHA and Empower should be ordered to immediately turn over to a receiver control and possession of the Hospital's license, all financial accounts used to receive revenues of the Hospital, buildings, facilities, fixtures, furnishings, equipment, devices, supplies, medicines, inventory, records, patient information, computer log-ins and passwords, and any and all other information and property that is necessary for the Hospital to provide medical care for its patients and future patients. The receiver should also be specifically directed and authorized to receive all payments to the Hospital from CMS, insurance companies and other payors.

***Statutory and case law authority for appointment of a receiver over CAH 7 and the Hospital:***

37. Under 12 O.S. § 1551(5), a plaintiff is entitled to appointment of a receiver when the defendant is insolvent. *Menager v. Exchange Nat. Bank of Tulsa*, 1932 OK 450, ¶ 5, 15 P.2d 35, 36.

38. Because CAH 7 is not paying its debts as they become due, it is clearly insolvent.

39. Further, under 12 O.S. § 1551(6), a receiver can be appointed in a case where receivers have previously been appointed in other, similar matters. It is indisputable that receivers have historically been appointed over health care providers such as hospitals and nursing homes in Oklahoma. The Oklahoma Court of Civil Appeals has recognized that appointment of a receiver under § 1551(6) is appropriate where, similar to this case, a receiver is needed in order to protect the health, safety, and welfare of patients of a nursing home until the nursing home can be leased or sold to a person or entity approved by the Oklahoma Department of Health. *HA Sand Springs, LLC v. Lakeside Care Center, LLC*, 2012 OK CIV APP 21, ¶ 3.

40. The receivership should continue at least until the Plaintiffs can transfer the Prague Hospital License to another entity.

41. Plaintiffs request the appointment of the Prague Healthcare Authority as receiver on an expedited basis, and submit that an appropriate bond for the Receiver is $10,000.00.

***Specific powers that must be given to the receiver to preserve the Hospital:***

42. The Receiver would be under the authority of this Court as authorized under 12 O.S. § 1551, and should be qualified, ordered, authorized and directed to immediately take CAH 7 and the Hospital into its possession and control. The Defendants and all persons claiming under them should be ordered and directed to immediately deliver to the Receiver all of the following in their possession: (1) possession and control of the Hospital and Hospital Premises; (2) any leases, contracts, agreements, books and records with respect to the operations and business of the Hospital; (3) all deposit accounts and other accounts in the names of the Defendants relating to the Hospital; and (4) all licenses (including the Prague Hospital License), registrations, certifications, books, records and documents related to the Hospital. Immediately upon entry of an Order, said

Receiver should be ordered and authorized to operate and manage the Hospital, including without limitation under the current license and Medicare and Medicaid certifications issued to and in the name of the Defendants, to the best advantage and to collect and receive all accrued or accruing revenues, collections, accounts, income, profits, rents and proceeds therefrom, including without limitation payments from the Medicare and Medicaid programs. Out of all remaining revenues, collections, accounts, income, profits, rents and proceeds coming into its hands pursuant to the terms of the Order, said Receiver should be authorized to pay the reasonable and necessary expenses required to carry on the business of running, operating and managing the Hospital, including lease payments and obligations, all accumulated taxes on any property, insurance premiums, expenses for the operations and management of the Hospital, expenses of any repairs necessary to preserve said Hospital and Hospital Premises in good condition and to maintain all required licenses and permits for the operation and management of the Hospital. Any revenues obtained by the Receiver in excess of the approved expenses authorized above should be held by the Receiver to await the further order of the Court. Unless a loss is compensable by the Receiver's Bond or pertinent insurance, the Receiver should not be personally responsible for financial losses of the Hospital.

43.   The Receiver should be authorized and directed to continue operating and managing the Hospital, including without limitation operating and managing the Hospital under the Prague Hospital License and Medicare and Medicaid certifications issued to and in the name of the Defendants, and to obtain such licenses, permits, certificates or other authorizations as may be required under state, federal or local law to operate, manage, maintain and collect the revenues and income generated by the Hospital.

44. The Receiver should have the right to issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate.

45. Because receivers hold property *in custodia legis*, Oklahoma Courts have long recognized that a receiver is covered by the doctrine of judicial immunity. The case of *Hathcock v. Barnes*, 2001 OK CIV APP 69, 25 P.3d 295, held that a "court-appointed receiver acts as a functionary of the court and as such is performing a judicial act. Thus, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Id. at ¶ 5, 25 P.3d at 296 (citing with approval *Farrimond v. State ex rel. Fisher*, 2000 OK 52, ¶ 15, n. 4, 8 P.3d 872, 876, n. 4). The Receiver, therefore, should expressly be ordered covered by the doctrine of judicial immunity.

46. Oklahoma Courts have also long recognized that a receiver's decisions regarding the management and operations of property within its control are subject to the Business Judgment Rule. *See Harris v. Dildine*, 1926 OK 839, ¶ 8, 251 P. 76, 77 (Okla. 1926). "A receiver is vested with discretion to manage and control the property in trusted to him in such manner as an ordinarily prudent business man would manage and control his own property." (Citing with approval *McKennon v. Pentecost*, 1899 OK 33, 56 P. 958, and *Interstate Mortgage Trust Co. v. Cunningham*, 1920 OK 138, 188 P. 1081.) The Receiver, therefore, should be ordered covered by the Business Judgment Rule.

47. The Receiver should have the right to contact and request the cooperation and assistance of the parties, and all other persons or entities served with a copy of the Order Appointing Receiver, should be required to cooperate fully with and assist the Receiver in the performance of its duties subject to the otherwise appropriate assertion of the Fifth Amendment

privilege against self-incrimination by any party, and other appropriate assertion of any other privilege or right. This cooperation and assistance should include, but not be limited to, the turnover of any and all assets, providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under the Order appointing it; providing any password required to access any computer or electronic files in any medium; turning over any assets (cash or other tangible assets), and advising all persons who owe money to the CAH 7 or any other entity to or for the Hospital, that all debts should be paid directly to the Receiver.

48. The Receiver should have the right to make Motions, at any time, and upon notice to all parties, to the Court for such other and further authority as it may deem necessary or desirable by the Receiver for the protection or benefit of the Hospital pending its final disposition by this suit.

49. The Receiver should be fairly compensated for the work performed on behalf of the Hospital. Said compensation should be subject to further order of the Court at the time of the selection and appointment of the Receiver. In addition, the Receiver should be authorized to utilize others to assist it in the performance of such duties and should be compensated for the time reasonably spent by such persons at rates determined at the time of the selection and appointment of the Receiver. The Receiver should also be entitled to reimbursement for reasonable out-of-pocket costs and expenses including the reasonable costs of an attorney to the extent required by the Receiver in connection with the performance of its duties as specified herein, which may be modified by order of this Court upon proper motion, after notice and a hearing.

50. If the Receiver and Plaintiffs determine it is necessary or in the best interests of the Hospital and its current and/or future patients, the Receiver should be authorized to enter into a

management agreement with a manager acceptable to the Receiver and Plaintiffs upon such terms and conditions as the Receiver and Plaintiffs deem reasonable, including without limitation the provision of and management responsibility for patient care, accounts payable, accounts receivable and monthly financial statements. The manager should be entitled to fair and reasonable compensation for services rendered and reimbursement of expenses if appropriate.

51. The Receiver should have injunctive relief for all of the actions granted in the Order Appointing the Receiver, which may be modified or waived only by (1) written approval from the Receiver or his counsel or (2) by order of this Court upon proper motion, after notice and a hearing.

52. The Receiver should have additional injunctive relief granted to compel any parties bringing a cause of action against the parties to this case and the receivership to file in, or to transfer existing actions to, Lincoln County and as a part of this action.

53. Notice of this Emergency Application for Appointment of Receiver has been given to the Oklahoma Department of Health via its General Counsel, Kim Baily, 100 Northeast 10th Street, Room 134, Oklahoma City, OK 73117-1207.

WHEREFORE, Plaintiffs pray that this Court appoint a Receiver for CAH 7 and the Prague Hospital License, as well as the property and facilities used for the operation of the Hospital, and that said Receiver be specifically ordered and instructed to take immediate possession of the Hospital, including (i) the Prague Hospital License (ii) CAH 7, (iii) RCHA, (iv) HMC, (v) Empower, and (vi) any other entity controlling the Hospital, as well as (vi) all financial accounts used to receive revenues of the Hospital, whether owned by CAH 7, HMC, RCHA, Empower or any other entity; take, receive and account for rents, profits and other income therefrom during the pendency of this action; and generally do such actions respecting the Hospital as may be reasonably necessary or this Court may authorize, until other order of this Court; and that

Defendants Perez, CAH 7, HMC, RCHA and Empower be ordered to immediately turn over to the Receiver control and possession of the Hospital's license, all financial accounts used to receive revenues of the Hospital, buildings, facilities, fixtures, furnishings, equipment, devices, supplies, medicines, inventory, records, patient information, computer log-ins and passwords, and any and all other information and property that are necessary for the Hospital to provide medical care for its patients and future patients, all as more fully set forth above. Finally, the Court should direct the ODH to transfer the Prague Hospital License to the Receiver.

Respectfully submitted,

J. Clay Christensen (OBA # 11789)
T.P. Howell (OBA # 10347)
Brock Z. Pittman (OBA # 32853)
Christensen Law Group, P.L.L.C.
The Parkway Building
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma 73116
(405) 232-2020  Telephone
(405) 236-1012  Facsimile
clay@christensenlawgroup.com
lynn@christensenlawgroup.com
brock@christensenlawgroup.com

- and –

Joseph M. Vorndran (OBA # 21391)
Stuart & Clover, P.L.L.C.
130 N. Broadway, Ste. 100
Shawnee, Oklahoma 74801
(405) 275-0700  Telephone
(405) 275-6805  Facsimile
joe@stuartclover.com

*Attorneys for Plaintiffs*