## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CITY OF PRAGUE, OKLAHOMA<br> and PRAGUE PUBLIC WORKS AUTHORITY,<br><br>                          Plaintiffs,<br><br>vs.<br><br>CAH ACQUISITION COMPANY 7, LLC;<br>HMC/CAH CONSOLIDATED, INC.;<br>RURAL COMMUNITY HOSPITALS OF<br>AMERICA, LLC; EMPOWER H.M.S.; JORGE<br>A. PEREZ; WCS CORPORATION, INC.,<br>successor-by-merger to CPP WOUND CARE<br>#24; LINCOLN COUNTY TREASURER AND<br>BOARD OF COUNTY COMMISSIONERS;<br>and JOHN DOES 1-10,<br><br>                          Defendants. | Case No. 19-CIV-89-G |

## PLAINTIFFS' MOTION FOR CIVIL CONTEMPT, WITH BRIEF IN SUPPORT

CHRISTENSEN LAW GROUP, P.L.L.C.

J. Clay Christensen (OBA #11789)
T.P. Howell (OBA #10347)
Jeffrey E. Tate (OBA #17150)
Jonathan M. Miles (OBA #31152)
Brock Z. Pittman (OBA #32853)
The Parkway Building
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma  73116
Telephone:  (405) 232-2020
Facsimile:   (405) 228-1113
clay@christensenlawgroup.com
lynn@christensenlawgroup.com
jeffrey@christensenlawgroup.com
jon@christensenlawgroup.com
brock@christensenlawgroup.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**PLAINTIFFS' MOTION FOR CIVIL CONTEMPT, WITH BRIEF IN SUPPORT**

**I.  INTRODUCTION** ................................................................................................ 1

**II.  BACKGROUND FACTS** ................................................................................ 2

    **(a) General Facts** ................................................................................................ 2

    **(b) Procedural History** ...................................................................................... 3

    **(c) Violations** ...................................................................................................... 4

**III.  ARGUMENT & AUTHORITIES** ..................................................................... 12

    **A.  The Hospital Defendants should be held in civil contempt for violating this Court's TRO** ................................................................................................ 12

    **B.  The Hospital Defendants cannot meet their burden to overcome a finding of civil contempt** .......................................................................................... 15

    **C.  The Remedy and Damages** ........................................................................ 15

**IV.  CONCLUSION** ................................................................................................ 17

**CERTIFICATE OF SERVICE** ............................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases:**

*Bad Ass Coffee Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. Partnership*, 95 F.Supp.2d 1252 (D. Utah 2000)...................................................................................... 12

*City of Yadkin v. CAH Acquisition Company 10 LLC, HMC/CAH Consolidated, Inc., and Rural Community Hospitals of America, LLC*, U.S. District Court for the Eastern District of North Carolina Western Division, Case No. CIV-15-229 ............... 5

*ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200 (10th Cir. 2011) ........................ 15

*F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) .................................................... 15

*F.T.C. v. Neiswonger,* 494 F.Supp.2d 1067 (E.D. Mo. 2007)....................................... 13

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) ............................................ 12

*O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F .2d 1204 (10th Cir.1992) .......... 16

*Premium Nutritional Prod., Inc. v. Ducote,* 2008 WL 2020390 (D. Kan. May 9, 2008)................................................................................................................... 16

*Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311 (10th Cir. 1998) ........................ 12

**Rules:**

Federal Rule of Civil Procedure 65 ....................................................................... 1, 13

Plaintiffs, the City of Prague, Oklahoma, and Prague Public Works Authority ("Prague" or "Plaintiffs"), by and through their counsel of record, and pursuant to Federal Rule of Civil Procedure 65, respectfully move this Court for an Order requiring Defendants, CAH Acquisition Company 7, LLC; HMC/CAH Consolidated, Inc.; Rural Community Hospitals of America, LLC; Empower H.M.S.; and Jorge A. Perez (collectively the "Hospital Defendants"), to appear and show cause why they should not be sanctioned and held in contempt for violations of the temporary restraining order issued in this action by the United States District Court for the Western District of Oklahoma on February 7, 2019 (the "TRO").[1]   The Plaintiffs seek that appropriate sanctions be levied against the Hospital Defendants, including appropriate contempt proceedings and for an award of costs and attorneys' fees in favor of the Plaintiffs.  In support of this motion, the Plaintiffs show the Court as follows:

## BRIEF IN SUPPORT

### I.   INTRODUCTION

Prague Community Hospital (the "Hospital") is a Critical Access Hospital located in Lincoln County, Oklahoma.  The immediate community that the Hospital serves is Prague, Oklahoma, which has a population of 2,412 as of 2017.  In addition to the City of Prague, the Hospital provides the surrounding areas with essential health care services. The Plaintiffs in an effort to protect the Hospital from closure, initiated an action against the Hospital Defendants in Lincoln County.  Prior to removal to this Court, Plaintiffs

---

[1] A true and correct copy of the TRO is attached hereto as <u>Exhibit 1.</u>

obtained a temporary restraining order from the District Court of Lincoln County ("State Court TRO").[2]   After removal, on February 7, 2019, this Court issued the TRO that "maintains the terms of a [State Court] TRO entered in the state district court prior to removal of this lawsuit to this Court, with some modifications."  *See* TRO, Exhibit 1.

The Plaintiffs have been forced to file this Motion due to the Hospital Defendants' brazen disregard for clear and concise court orders.  The Hospital Defendants have violated the State Court TRO and/or this Court's TRO.[3]   Plaintiffs have discovered a series of violations of the TRO in which the Hospital Defendants have wholly and blatantly disregarded the TRO.  These violations include, but are not limited to, the following: (a) failing to provide the daily written reports of income and expenses as set forth in the TRO and (b) transferring the management and operation of the Hospital to a non-party to this action, iHealthcare Management II Company ("iHealthcare"), and failing to disclose this fact to this Court.  The Plaintiffs now seek appropriate relief from this Court for the Hospital Defendants' callous disregard of this Court's TRO and the well-being of the residents of the City of Prague.

## II.   BACKGROUND FACTS

**(a) General Facts.**

1.      The City of Prague is an Oklahoma municipal governmental corporation and the Prague Public Works Authority is an Oklahoma public trust.

---

[2] A true and correct copy of the State Court TRO is attached hereto as Exhibit 2.
[3] For purposes of simplicity the Plaintiffs will only refer to this Court's TRO, but also maintains that the State Court TRO was and is in full force and effect, and was also violated.

2.      CAH Acquisition Company 7 ("CAH 7") leased the Hospital premises and operated it, or one of its affiliates, as a licensed critical hospital pursuant to a hospital lease, the most recent lease dated December 31, 2013.

3.      Other Hospital Defendants are either the manager of Defendant CAH 7 and/or are under an agreement with CAH 7 to operate the Hospital and/or provide services to the Hospital.

4.      For example, in the Hospital Defendants' *Emergency Motion to Re-set Hearing Set for Feruary* [sic] *8, 2019*, [Doc. 19] ("Motion to Re-set Hearing") counsel for the Hospital Defendants represented the following at paragraph six:

> Empower HMS is the management company which operates
> CAH Acquisition 7, LLC d/b/a Prague Community Hospital.

**(b) Procedural History.**

5.      Plaintiffs originally filed the above-captioned lawsuit (the "Lawsuit") on January 15, 2019, in the District Court of Lincoln County, State of Oklahoma.

6.      Prior to removal, on January 16, 2019, the Plaintiffs obtained the State Court TRO against the Hospital Defendants that provided, in pertinent part:

> Defendants CAH 7, HMC, RCHA and Empower, as well as their Affiliates, officers, agents, employees and assigns, are barred and enjoyed from (a) from terminating or curtailing the existing services they are providing to Plaintiffs, to the Hospital and to the community[.]

*See* State Court TRO, Exhibit 2.

7.      On January 31, 2019, the Hospital Defendants filed a Notice of Removal

[Doc 1], which removed the Lawsuit to the United States District Court for the Western

District of Oklahoma.

8.      Thereafter, on February 7, 2019, this Court issued the TRO against the

Hospital Defendants that provided, in pertinent part:

> IT IS ORDERED that the Hospital Defendants, as well as their
> affiliates, officers, agents, employees, and assigns, are barred
> and enjoined: (i) from terminating or curtailing the existing
> services they are providing to Plaintiffs, to the Prague
> Community Hospital, and to the community . . . are required to
> operate the Prague Community Hospital in the normal course
> of business until further order of the Court.
>
> IT IS FURTHER ORDERED that the Hospital Defendants
> shall ensure that a daily written report of the income and
> expenses of Prague Community Hospital is provided to
> Plaintiffs each day during the pendency of this Order.

*See* TRO, Exhibit 1.

**(c) Violations.**[4]

*First Violation of TRO – Failure to Provide Daily Written Reports.*

9.      As of the filing of this Motion, Plaintiffs' counsel has *not* received a single

daily written report of income and expenses of the Hospital from the Hospital Defendants.

---

[4] By way of introduction, this is not the first time the Hospital Defendants, or their related
entities, have violated a Court's Order.  *See City of Yadkin v. CAH Acquisition Company 10 LLC,
HMC/CAH Consolidated, Inc., and Rural Community Hospitals of America, LLC*, U.S. District
Court for the Eastern District of North Carolina Western Division, Case No. CIV-15-229, where
the Court found the above named defendants in civil contempt for violating a temporary
restraining order.  A true and correct copy of the Order granting in part and denying in part
Yadkin County's motion for order to show cause [Doc. 29] is attached hereto as Exhibit 3.

10.     The TRO was entered by this Court on February 7, 2019, and provides that the Hospital Defendants "shall ensure" Plaintiffs receive daily written reports.  This directive by the Court is not ambiguous, it is not vague, and it is not confusing.  Rather it is a clear and concise command to the Hospital Defendants to produce daily reports to Plaintiffs.  Furthermore, the written reports were discussed on the telephone conference call on February 6, 2019, at about 4:00 p.m. with this Court.

11.     Since the entry of the TRO, seven (7) days have elapsed and not a single daily report of income and expense has been produced to Plaintiffs.

12.     Accordingly, the Hospital Defendants are in direct violation of this Court's TRO.

13.     The failure to provide daily written reports is extremely concerning and damaging to Plaintiffs.  For example, Plaintiffs' counsel learned that the professional liability insurance would be cancelled on Sunday, February 10, 2019, because of non-payment.  Therefore, counsel for Plaintiffs directed a letter to counsel for the Hospital Defendants requesting payment of the insurance premium as well as for necessary supplies at the Hospital.  A true and correct copy of a letter dated February 8, 2019, from Jeffrey E. Tate to counsel for the Hospital Defendants is attached hereto as Exhibit 4.

14.     Counsel for Hospital Defendants, Peter W. Brolick, responded by email stating that the insurance would not lapse on February 10, 2019, referencing a copied email from Truss Advantage, the carrier of the insurance, stating an extension had been granted until Tuesday February 12, at close of business for payment in order to avoid cancellation.

A true and correct copy of the email correspondence from Peter W. Brolick on February 8, 2019, is attached hereto as Exhibit 5.

15.     Upon information and belief, the malpractice liability insurance was paid by the Hospital Defendants on February 13, 2019.

*Second Violation of TRO – Transfer of Management to iHealthcare and failure to inform this Court of such transfer.*

16.     The Hospital Defendants have transferred management operations of the Hospital to iHealthcare and/or its affiliates.  In so doing, the Hospital Defendants directly violated the TRO.

17.     Upon information and belief, CAH 7 holds (or held) the license to operate the Hospital, which is the only hospital in the City of Prague.

18.     The Hospital has been managed by CAH 7 and/or Empower.

19.     The Hospital Defendants' Motion to Re-set Hearing was filed on February 5, 2019, and represented to this Court and Plaintiffs at paragraph six that:

> Empower HMS is the management company which operates CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital.

20.     As this Court will recall, the Hospital Defendants in their Motion to Re-set Hearing informed the Court that the President of Empower is Michael Christensen, who allegedly is a "crucial witness" for the Hospital Defendants.  So much so, that the Motion to Re-set Hearing provided that because Mr. Christensen had recently suffered "two heart attacks," the hearing set for February 8, 2019, should be continued.

21.     However, Plaintiffs have acquired information indicating that neither Empower nor CAH 7 are managing the Hospital.  Instead, on January 7, 2019, Jorge A. Perez (a recent director of iHealthcare) entered into a certain Business Development Agreement with iHealthcare Management II Company, a Florida Corporation.   The Business Development Agreement at paragraph one provides:

> 1) **BUSINESS DEVELOPMENT ENGAGEMENT:**
> a) iHealthcare hereby engages Perez to deliver a certain valid, binding, exclusive and executed hospital management contract for new business for and on behalf of iHealthcare Management II Company;
> . . .
> c)Perez shall obtain any required consents, authorizations and binding approvals necessary to deliver an executed binding ten-year contracts for hospital management services to iHealthcare Management II Company;
> d)Perez will ensure iHealthcare is the exclusive provider of management services under these new agreements;
> . . .
> f)The target inception date will be January 7, 2019 and limited only to CAH Acquisition Company 7, LLC D/B/A Prague Community Hospital.

*See* Business Development Agreement, a true and correct copy of which is attached hereto as Exhibit 6, at ¶ 1.

22.     Also, on January 7, 2019, Jorge A. Perez on behalf of CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital, entered into a certain Management and Administrative Services Agreement with iHealthcare Management II Company.  The Management and Administrative Services Agreement provides as follows:

> WHEREAS, PCH [Prague Community Hospital] owns and operates an acute general medical and surgical hospital (the "PCH Facilities") located on the medical campus with a

7

> principal address of 1322 Klabzuba Avenue, Prague, Oklahoma 74864;
>
> WHEREAS, Manager [iHealthcare] is a Hospital Management Company;
>
> WHEREAS, Manager has demonstrated expertise and a track record of successfully managing and improving the performance of hospitals serving rural communities;
>
> WHEREAS, PCH desires that Manager provide services to administer, supervise, and manage, and Manager desires to administer, supervise, and manage, the operations of the PCH Facilities on behalf of PCH commencing on January 7, 2019 (the "Effective Date") on the terms and conditions set forth hereinafter, in furtherance of and consistent with PCH's mission[.]

*See* Management and Administrative Services Agreement, a true and correct copy of which is attached hereto as Exhibit 7, at Recitals.

23. The Business Development Agreement as well as the Management and Administrative Services Agreement were both obtained from iHealthcare's Form 8-K filing with the Securities and Exchange Commission, which was filed on February 5, 2019. A true and correct copy of the Form 8-K is attached hereto as Exhibit 8.

24. From the Form 8-K of iHealthcare, Inc., iHealthcare Management Company II appears to be a wholly owned subsidiary of iHealthcare, Inc., a Delaware corporation. *See* Form 8-K, Exhibit 8.

25. Furthermore, on February 6, 2019, iHealthcare disseminated a press release (the "Press Release"). In the Press Release iHealthcare announced that "it finalized the execution of thirteen Hospital Management and Administrative Services Agreements . . .

with thirteen different medical hospital facilities, located in Seven States."  A true and correct copy of the Press Release is attached hereto as Exhibit 9.

26.     Finally, on February 7, 2019, Michael Christensen, alleged President of Empower, directed an email to the Hospital, *inter alia*, with a subject line of: "iHealthcare, Inc. to immediately assume management of all empowerHMS facilities."  A true and correct copy of February 7, 2019, email correspondence from Michael Christensen is attached hereto as Exhibit 10.

27.     Interestingly, Mr. Christensen is also listed as an officer of iHealthcare on iHealthcare, Inc.'s website ("iHealthcare's Website").  Per iHealthcare's Website, Mr. Christensen's title at iHealthcare is "President Hospital Network."  A true and correct copy of iHealthcare's Website showing iHealthcare's leadership is attached hereto as Exhibit 11.[5]

28.     Further under "Our Locations," iHealthcare's Website also represents that a location of its "comprehensive hospital network" is the Hospital in Prague.  A true and correct copy of iHealthcare's Website showing the Hospital as a location is attached hereto as Exhibit 12.[6]

29.     Therefore, a transfer of management operations from Empower and/or CAH 7 to iHealthcare appears to have occurred sometime between January 7, 2019, and February 7, 2019.

---

[5] iHealthcare's Website showing iHealthcare's leadership URL:
https://www.ihealthcaresystems.com/Leadership
[6] iHealthcare's Website showing the Hospital as a location URL:
https://www.ihealthcaresystems.com/Locations

30.     It is unknown if the Hospital Defendants' local counsel was aware of the transition of management services for the Hospital from Empower and/or CAH 7 to iHealthcare.  However, national counsel for Empower and CAH 7, Mr. Frank Smith, knew or should have known that a transfer in management of the Hospital was underway.  This transition was not disclosed to Plaintiffs' counsel nor this Court.

31.     The Hospital Defendants absolutely misrepresented facts to this Court when their Motion to Re-Set was filed by stating that Empower was managing the Hospital and its President needed be present at any receivership hearing.

32.     Further, because there is evidence suggesting that although the Management and Administrative Services Agreement is dated January 7, 2019, the actual management and transfer of operations was not effective until February, the transfer in management from Empower and/or CAH 7 to iHealthcare is a violation of the TRO issued by this Court that was in full force and effect and/or the State Court TRO that was still in full force and effect.

33.     The TRO provides that the Hospital Defendants are barred and enjoined from terminating the existing services they provide to Plaintiffs. *See* TRO, Exhibit 1.  Yet, the Hospital Defendants have transferred management operations of the Hospital to a non-party to this case.  In so doing, the Hospital Defendants have intentionally and callously disregarded this Court's TRO and frankly this Court in failing to disclose relevant facts.

34.     Further, transfer of management operations to another entity could endanger, and counties to potentially endanger, the health and safety of the residents of the City of Prague and the surrounding areas.  This is because iHealthcare is not a party to this lawsuit

and is not subject to the TRO.  Therefore, on a whim, iHealthcare could elect to shut down the Hospital, terminate the medical treatment being provided at the Hospital, and disrupt the community's health care.

35.     This Court's TRO also provided that the Hospital Defendants are required to operate the Hospital in the normal course of business until further order of the Court. *See* TRO, Exhibit 1.  Surely the Hospital Defendants do not consider an outright transfer of management operations to another entity as in the normal course of business.

36.     The national counsel for the Hospital Defendants, Mr. Frank Smith, failed to mention any transfer of management operations to counsel for Plaintiffs.  Further, and more importantly, the national counsel for Hospital Defendants failed to mention any transfer of management operations to this Court.

37.     Alarmingly, the same day as this Court's telephone conference with counsel for Plaintiffs, counsel for the Hospital Defendants, and other Defendants – Wednesday February 6, 2019 – iHealthcare disseminated the Press Release.  *See* Press Release, Exhibit 9.

38.     Moreover, the very next day, the key witness for the Hospital Defendants, Michael Christensen, circulated the email correspondence announcing iHealthcare's immediate assumption of management obligations.  *See* February 7, 2019, email from Michael Christensen, Exhibit 10.

39.     Plaintiffs also have acquired information that the representation of Mr. Christensen's two heart attacks may have been embellished and false, as some Hospital employees were advised that Mr. Christensen only had a procedure to remove water

surrounding his heart.  In any event, it is apparent that Mr. Christensen was back at work on February 7, 2019, as he announced iHealthcare's assumption of management operations of the Hospital.  *See* February 7, 2019, email from Michael Christensen, Exhibit 10.

40.     Plaintiffs contend that the transfer of management obligations from the Hospital Defendants to iHealthcare should have been disclosed to Plaintiffs and this Court. Rather, Plaintiffs discovered this information through alternative means.

41.     Plaintiffs further urge this Court to find that transfer of management operations from the Hospital Defendants to iHealthcare is in direct violation of this Court's TRO, because the actual transition did not occur until after the TRO was entered.[7]

## III.     ARGUMENT & AUTHORITIES

### A.     The Hospital Defendants should be held in civil contempt for violating this Court's TRO.

A finding of civil contempt is appropriate if the moving party shows by clear and convince evidence that "[1] that a valid court order existed, [2] that the defendant had knowledge of the order, and [3] that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (internal citation omitted). A movant need not prove an intentional or purposeful violation; instead, courts are justified in finding civil contempt based merely on a party's "failure to be reasonably diligent" in complying with the order. *Bad Ass Coffee Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. Partnership*, 95 F.Supp.2d 1252, 1256 (D. Utah 2000); *see generally McComb v.*

_____

[7] *See* TRO time entered at 2:37 p.m. on February 7, 2019; *see also* email from Michael Christensen time stamped at 3:02 p.m. on February 7, 2019.

*Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt . . . .  Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.").

Furthermore, pursuant to Fed. R. Civ. P. 65(d)(2), a party who receives actual notice of a TRO "by personal service *or otherwise* " is bound by the order. Fed. R. Civ. P. 65(d)(2) (emphasis added).  Personal service, therefore, is not required and a party with <u>knowledge</u> of the TRO is bound by its terms. *See, e.g., F.T.C. v. Neiswonger,* 494 F.Supp.2d 1067, 1079 (E.D. Mo. 2007) ("Personal service is not required under Rule 65(d).  All that is required is knowledge of the mere existence of the injunction; not its precise terms.  Furthermore, direct evidence is not required to sustain the FTC's burden of showing actual notice." (citation omitted)).

In this matter, it cannot be disputed that there is a valid court order.  The TRO appears in the record of this case at Doc. 24.  It also cannot be disputed that the Hospital Defendants had knowledge of the court order.  Counsel for Hospital Defendants negotiated certain terms in the TRO during the February 6, 2019, conference call with this Court.  Furthermore, the TRO was circulated and served on counsel for the Hospital Defendants by the CM/ECF system. Therefore, the first two elements of a finding for civil contempt are clearly met.

For the third element, the Hospital Defendants have disobeyed, disregarded, and violated this Court's TRO under more than one occasion.  The evidence is clear.  The evidence is convincing.

The undersigned certifies by signing and filing this Motion that Plaintiffs' counsel has not received a single written report of income and expenses of the Hospital during the pendency of the TRO.  Accordingly, Plaintiffs have establishment the *first violation* of the TRO by clear and convincing evidence.

Furthermore, Plaintiffs have attached to this Motion evidence that the management of the Hospital has been transferred from the Hospital Defendants to iHealthcare. Moreover, Plaintiffs have attached additional evidence suggesting that the agreements are dated January 7, 2019, the actual and effective transfer of operations was not until February.[8]  Therefore, Plaintiffs have establishment the *second violation* of the TRO by clear and convincing evidence.

In sum, there was a valid temporary restraining order entered by this Court on February 7, 2019.  The Hospital Defendants were aware of the temporary restraining order, and discussed the content of the temporary restraining order with this Court by telephone conference on February 6, 2019.  There is ample evidence before this Court that illustrates that the Hospital Defendants flagrantly disregarded this Court's TRO; the Plaintiffs have presented admissible evidence that no reports of income and expenses of the Hospital have been provided to Plaintiffs, and that the Hospital Defendants have transferred management operations to iHealthcare.

---

[8] In the alternative, counsel for the Hospital Defendants namely, the national counsel, mislead this Court and the Plaintiffs in their representations as well as concealed the true management of the Hospital.

**B.** **The Hospital Defendants cannot meet their burden to overcome a finding of civil contempt.**

"Once [Plaintiffs] ma[k]e that showing, the burden then shift[s to the Hospital Defendants] to show either that [t]he[y] complied with the order or that [t]he[y] could not comply with it." *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1210 (10th Cir. 2011).  As has been demonstrated to this Court, the Hospital Defendants have *not* complied with the TRO.

There is no logical explanation as to why the Hospital Defendants could not have complied with the TRO.  Surely, the Hospital Defendants cannot contend that they could not have sent Plaintiffs reports of income and expenses of the Hospital.  Even more, it would be unreasonable for the Hospital Defendants to contend that they could not have transferred management operations of the Hospital to iHealthcare or, at the very least, informed the Court and the Plaintiffs of such intent to transfer.

The Plaintiffs have met their burden of establishing the Hospital Defendants are in contempt of this Court's February 7, 2019, TRO, and the Hospital Defendants cannot logically rebut such a finding.

**C.** **The Remedy and Damages.**

The Tenth Circuit has held "[d]amages need only be proven by a preponderance of evidence." *F.T.C. v. Kuykendall*, 371 F.3d 745, 751 (10th Cir. 2004).  Further, in a civil contempt proceeding, the damages are remedial in nature and for the benefit of the movant. *Id*. at 752.  To that end, "[c]ivil contempt awards are intended to coerce compliance with a court's order or to compensate plaintiff for losses sustained. Plaintiff, however, need not

15

show actual losses. An award of the profits of the contemnor is an acceptable substitute for such a showing." *Premium Nutritional Prod., Inc. v. Ducote,* 2008 WL 2020390, at fn. 1 (D. Kan. May 9, 2008) (citations omitted). A district court has broad discretion in using its contempt powers to require adherence to court orders. *O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F .2d 1204, 1209 (10th Cir.1992) (citations omitted).

The Hospital Defendants, individually and collectively, had actual knowledge of a valid court order and proceeded deliberately, in concert, to assist Empower and/or CAH 7 to violate its terms. The Hospital Defendants' action caused and continue to cause harm to the Plaintiffs. The Plaintiffs are unaware of whether Medicare and Medicaid payments have been made to the Hospital. The Plaintiffs are unaware of whether payments are being made to vendors. Most importantly, Plaintiffs were unaware during the pendency of the entered TRO whether the medical malpractice insurance for the Hospital had been paid, or even could be paid.[9]

The Hospital Defendants have also been damaged by transfer of management to iHealthcare. The Plaintiffs were in the process of seeking a receivership and instead the Hospital Defendants transferred the management to another company. Further, the damages are unmeasurable to the extent that the new management company, iHealthcare, takes action detrimental to the Hospital (such as closure) and to the Plaintiffs due to the Hospital Defendants' transfer of management to them. Lastly, any sums that were transferred or may be transferred in the future from iHealthcare to any of the Hospital

---

[9] Upon information and belief, the malpractice insurance premium was paid on February 13, 2019.

16

Defendants or their affiliates should be immediately awarded to Plaintiffs as damages for violating the TRO.

The Plaintiffs also seek equitable relief.  Namely, the Plaintiffs seek an award of a receivership to facilitate the transition of the Hospital's critical access hospital operation to a new operator.  The Plaintiffs have additionally suffered damages in the form of attorneys' fees and costs for pursing this Motion, related filings, and related proceedings.

## IV.   CONCLUSION

The Hospital Defendants disregard of this Court's TRO constitutes civil contempt. The Plaintiffs request that the Hospital Defendants be ordered to appear and show cause why they should not be sanctioned for civil contempt.  Lastly, Plaintiffs request that this Court award civil contempt sanctions that it deems appropriate, including reasonable attorneys' fees and costs in favor of Plaintiffs.

CHRISTENSEN LAW GROUP, P.L.L.C.

By:   /s/ J. Clay Christensen
      J. Clay Christensen (OBA #11789)
      T. P. Howell (OBA#10347)
      Jeffrey E. Tate (OBA #17150)
      Jonathan M. Miles (OBA #31152)
      Brock Z. Pittman (OBA #32853)
      The Parkway Building
      3401 N.W. 63rd Street, Suite 600
      Oklahoma City, Oklahoma  73116
      Telephone:  (405) 232-2020
      Facsimile:   (405) 228-1113
      clay@christensenlawgroup.com
      lynn@christensenlawgroup.com
      jeffrey@christensenlawgroup.com
      jon@christensenlawgroup.com
      brock@christensenlawgroup.com

      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This shall certify that on this 14th day of February, 2019, a true and correct copy of the above and foregoing was sent electronically to the Clerk of the Court using the CM/ECF System and transmittal of a Notice of Electronic Filing to the following counsel registered for ECF in this case:

Peter W. Brolick
Kristopher E. Koepsel
Riggs, Abney, Neal,
Turpen, Orbison & Lewis
502 West Sixth Street
Tulsa, OK 74119
pbrolick@riggsabney.com
kkoepsel@riggsabney.com

James M. Reed
John T. Richer
Hall, Estill, Hardwick, Gable,
Golden, & Nelson P.C.
320 South Boston Avenue, Suite 200
Tulsa, OK 74103
jreed@hallestill.com
jricher@hallestill.com

*-and-*

*Attorneys for WCS Corporation, Inc.*

Frank M. Smith, Pro Hac Vice
FMS Lawyer, PL
9900 Stirling Road, Suite 226
Cooper City, FL 33024
frank.smith@fmslawyer.com

*Attorneys for CAH Acquisition Company 7, LLC; HMC/CAH Consolidated, Inc.,; Rural Community Hospitals of America, LLC; Empower H.M.S; Jorge A. Perez*

/s/ J. Clay Christensen
J. Clay Christensen