# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) THE CITY OF PRAGUE, OKLAHOMA and<br>(2) PRAGUE PUBLIC WORKS AUTHORITY<br><br>          Plaintiffs,<br><br>v.<br><br>(3) CAH ACQUISITION COMPANY 7, LLC<br>(4) HMC/CAH CONSOLIDATED, INC.<br>(5) RURAL COMMUNITY HOSPITALS OF AMERICA, LLC;<br>(6) EMPOWER H.M.S.;<br>(7) JORGE A. PEREZ;<br>(8) WCS CORPORATION, INC., successor-by-merger to CPP WOUND CARE #24;<br>(9) LINCOLN COUNTY TREASURER AND BOARD OF COUNTY COMMISSIONERS, and<br>(10) JOHN DOES 1-10;<br><br>          Defendants. | Case No. CIV-19-89-G |

**DEFENDANTS' CAH ACQUISITION COMPANY 7, LLC; RURAL COMMUNITY HOSPITALS OF AMERICA, LLC; EMPOWER H.M.S.; AND JORGE PEREZ's RESPONSE TO MOTION**
<u>**FOR CIVIL CONTEMPT [DKT NO. 31] AND SUPPLEMENT [DKT NO. 41]**</u>

COMES NOW, Defendants CAH Acquisition Company 7, LLC ("CAH 7"); Rural Community Hospitals of America, LLC ("RCHA"); Empower H.M.S ("Empower"); and Jorge Perez, (collectively "Defendants") hereby submit the following in response to Plaintiff's Motion for Civil Contempt [Dkt No. 31] and Supplement to Plaintiff's Motion for Civil Contempt [Dkt 41].

## INTRODUCTION

Defendants' ability to operate the Prague Community Hospital has been inhibited by Plaintiffs' own efforts to take over the Prague Community Hospital, which is nothing more than a lease dispute and Plaintiffs are seeking to seize assets belonging to Defendants without any compensation. Such actions have included Plaintiffs through its newly created Prague Healthcare Authority, which Plaintiff City is believed to be the beneficiary of, obtained a license to operate the Prague Community Hospital, on or about February 15, 2019. Such action was not disclosed to Defendants at the time said license was obtained, and Defendants are still seeking to obtain information as to how such license was obtained. As of February 15, 2019, Defendants ceased to have a license to be able to operate the hospital as a result of Plaintiffs' and/or Prague Healthcare Authority's acts which resulted in the termination of CAH 7's license.

Due to other litigation in other jurisdictions, the operational accounts for Defendants are believed to have been frozen, leaving Defendants without money to operate the hospital, which is the very reason why Defendants are willing to consent to a receiver be placed over the hospital.

## ARGUMENT AND AUTHORITIES

1. The Prague Community Hospital is a private medical facility that provides the City of Prague and surrounding areas with temporary and short-term healthcare services. No patients of Prague Community Hospital are under long-term care. Patients have numerous choices for hospitals, including Drumright, Seminole, Tulsa, Oklahoma City and numerous other hospital facilities.

2. Critical Access Hospitals ("CAHs") are rural hospitals that maintain no more than 25 inpatient beds and comply with the other applicable federal regulatory requirements.

3. On October 13, 2008, CAH 7 purchased all of the assets of Prague Community Hospital and assumed the then existing lease with Plaintiffs.

4. On April 12, 2010, Plaintiffs executed a Landlord Waiver in favor of the lender to CAH 7, Gemino Healthcare Finance, LLC ("Lender") as to all "receivables". *See* Landlord Waiver, attached as Exhibit "1." Paragraph 2 of the Landlord Waiver states: "Landlord subordinates each and every right which Landlord now has or hereafter may have, under the laws of the State of Oklahoma, or by virtue of the Lease, or any renewals, extensions, amendments, modifications, substitutions or replacements thereof ('New Lease') or by virtue of Borrower's occupation of the Premises, to levy or distrain upon, for rent, in arrears, in advance or both or for any monetary obligation arising by reason of default under the Lease or any New Lease, or to claim or assert any lien, right, claim or title to any or all of the Collateral, which now is or hereafter may be located, on the Premises." *See* Landlord Waiver, attached as Exhibit "1."

5. Paragraph 3 of the Landlord Waiver states: "Landlord recognizes and acknowledges that Lender's security interest in the Collateral pursuant to the Credit Agreement is superior to any lien, right or claim or title of any nature which Landlord now has or hereafter may have or assert in or to the Collateral by statute, the Lease, any New Lease, any other agreement or otherwise. **In connection with the foregoing, Landlord acknowledges and agrees that it shall not exercise any rights that it may have in connection with the Collateral until Borrower's Liabilities are paid and satisfied in full.**" *See* Landlord Waiver, attached as Exhibit "1."

6. CAH 7 is still indebted under the original indebtedness to Gemino Healthcare Finance, LLC. The current owner and holder of the "Gemino Note" is Health Acquisition Company, LLC. As such, the filing of this action by Plaintiffs and the relief sought is in violation of the Landlord waiver.

7. Further, numbered ¶ 4 of the Landlord Waiver requires Plaintiffs to deliver any notice of default by Borrower under the lease to Lender and allows Lender the opportunity to cure any default. No such notice was provided to the current holders of the Gemino Note. *See* Landlord Waiver, attached as Exhibit "1."

8. On December 31, 2013, Plaintiffs extended the Lease with CAH 7 that, together with any amendments or extensions, terminated on December 31, 2018. *See* Lease Agreement, attached as Exhibit "2."

9. On December 31, 2013, Plaintiffs extended the Lease with CAH 7 that, together with any amendments or extensions, terminated on December 31, 2018. *See* Lease Agreement, attached as Exhibit "2."

10. All of CAH 7's obligations under the lease terminated upon the expiration of the Term of the lease, which by Plaintiffs own admission, expired on December 31, 2018. Any obligations of CAH 7 under sections 2.1.1 or section 4.1 (the obligation to operate a hospital continuously during the Term as a critical access hospital) expired on December 31, 2018. *See* Lease, attached as Exhibit "2." Further, pursuant to section 7.2 of the Lease:

> **Upon termination or expiration of this Agreement [December 31, 2018], Hospital shall have a reasonable time, not to exceed forty-five (45) days to remove all of its personal property. Any property not removed within such period shall be deemed abandoned by Hospital.**

11. Therefore, the parties had already agreed that CAH 7 shall cease operating and remove all of its property by February 14, 2019 or it shall lose all of its property. As such, the requested receivership, requiring the continued operation of Prague Community Hospital by Defendants, utilizing its own resources, directly contradicts the express terms of the Lease Agreement between the parties and will cause an unlawful taking of CAH 7's property, forcing it to an unlawful forfeiture of property to the Plaintiffs. *See* Lease Agreement, attached as Exhibit "2."

12. Unfortunately, due to the actions of the Prague Healthcare Authority, to its knowledge, CAH 7 has no ability to operate Prague Hospital after the loss of its license to the Prague Healthcare Authority on February 15, 2019. *See* License 2164, Prague Healthcare Authority, attached as Exhibit "3" and License 2164 of CAH 7, attached as Exhibit "4." CAH 7 is unaware how CAH 7's license was taken over by Prague Healthcare

Authority.[1]  Both licenses state that they are non-transferrable or assignable and CAH 7 did not authorize, nor will it authorize the change, as a result of an eviction action.  *See* License 2164, Prague Healthcare Authority, attached as Exhibit "3" and License 2164 of CAH 7, attached as Exhibit "4."

13.  "'Hospital' means any institution, place, building or agency, public or private, whether organized for profit or not, devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment or care of patients admitted for overnight stay or longer in order to obtain medical care, surgical care, obstetrical care, or nursing care for illness, disease, injury, infirmity, or deformity."  63 O.S. § 1-701(1).  Hospitals must have licenses in order to operate. 63 O.S. § 1-702(A).  Licenses may be issued for a period of more than twelve (12) months, but not more than twenty-four (24) months.  63 O.S. § 1-704(B). The license shall be issued only for the premises identified in the application and shall not be transferable or assignable.  63 O.S. § 1-704(D)(1) and (2). "No person or entity shall operate a hospital without first obtaining a license from the Department. The license is not transferable or assignable."  OAC 310:667-1-3(a)(1).  The application for renewal of a current license must be filed at least thirty (30) days before the expiration of

---

[1] Defendants have requested documentation as to how Plaintiffs in conjunction with their newly created Prague Healthcare Authority obtained such license, including applications and any other documentation submitted to the Oklahoma State Department of Health and any communications with the hospital's CEO.  Plaintiffs are public entities subject to the Oklahoma Open Records Act.  Plaintiffs through their counsel have advised that they will bring the license and "any applications" to at the hearing scheduled for March 5, 2019.  Plaintiffs' counsel, through its limited response, has seemingly refused to provide any further information in advance of the hearing relating to such communications with the hospital CEO, communications with the State department of Health about the licencse, or any documents submitted in conjunctions with such license application.

the current license. OAC 310:667-1-3(b)(3); OAC 310:667-1-3(b)(3). The Oklahoma Attorney General opined in OAG 75:319, "[i]nasmuch as neither hospital nor nursing home licenses may be transferred or assigned, it is clear that at such time as the ownership changes hands, the license automatically terminates." The actions of Plaintiffs and/or Prague Healthcare Authority, either individually or in concert with one another, resulted in a termination of Defendants license to operate the hospital.

14. Upon information and belief, the accounts related to CAH 7 and Empower have been frozen. Neither CAH 7 nor Empower (the managing entity of for the hospital) have access to accounts of CAH 7, and consequently no money to operate due to other litigation in other jurisdiction. Such actions outside the control of Defendants have resulted in Defendants inability to operate or otherwise pay employees, creditors, or anyone.

15. Further, after the hearing held in this case on February 7, 2019, Empower has advised that the employees of the hospital have had limited communication with Empower. Typically, employees of the hospital are involved in a managerial call each day. However, since sometime in February, hospital employees who typically attended such managerial calls have failed to participate in the call and have had no communication with Empower.

16. Empower was granted management control of the Prague Community Hospital effective April 20, 2017, when it was assigned management rights by the former management company Rural Community Hospitals of America, LLC ("RCHA") in November of 2017 retroactive to April of 2017. After this point in time, RCHA had no power or responsibility over the decision making process with respect to the operations of the hospital, including the payment of liabilities to employees and third parties. See

Assignment, attached as Exhibit "5"; *see also* Management Agreement, attached as Exhibit "6".

17. Empower is generally responsible for all human resources services at the Prague Community Hospital, has responsibility for general accounting functions, for establishing and implementing accounting procedures, for management of revenue cycle functions, for paying hospital expenses, and for generally operating the hospital in accordance with applicable law. See Assignment, attached as Exhibit "5"; *see also* Management Agreement, attached as Exhibit "6".

18. RCHA has not been in managerial control of CAH 7 for approximately 2 years and has no ability nor contractual authority to operate CAH 7 or Empower. In November of 2017, Empower was assigned the management   See Assignment, attached as Exhibit "5"; *see also* Management Agreement, attached as Exhibit "6". Based on the foregoing, RCHA has had no management responsibility since 2017, and is improperly named in the lawsuit and should not be held in contempt.

19. CAH 7 is prepared to consent, as the other Defendants are, to the appointment of a qualified receiver over the operations with of the hospital, with an appropriate bond, which will act in the interests of the hospital, CAH 7, and its owners in order to limit the debts and liabilities of CAH 7 and maximize the assets of CAH 7. This is the equitable relief sought by Plaintiffs in their Motion for Civil Contempt. Defendants are willing to consent to such relief, again based upon the appointment of a qualified and independent receiver.

20.     Empower suspended the hospital CEO when it was discovered that the hospital CEO may have been involved in a process of transferring the license to Prague Healthcare Authority, thereby terminating the license issued to CAH7.  The CEO was not terminated, merely suspended during the pendency of an investigation into this issue, which is ongoing.  This suspension is not contrary to the Court's TRO, as the Court's Order did not authorize employees, such as the CEO, to breach any duties owed to the hospital or work for the benefit of third parties whose interests are not aligned with those of her employer.

21.     Mr. Perez has been improperly named in this lawsuit as an alter ego which is prohibited by Okla. Stat. tit. 12 §682 (B) and (C).  Plaintiffs' have provided no basis whatsoever for Mr. Perez to be named on an alter ego theory consistent with Oklahoma law.

## **CONCLUSION**

Defendants CAH Acquisition Company 7, LLC ("CAH 7"); Rural Community Hospitals of America, LLC ("RCHA"); Empower H.M.S ("Empower"); and Jorge Perez, are willing to consent to the appointment of an appropriate receiver due to Empower and CAH 7's inability to operate, finance or manage the hospital as a result of litigation related orders in other jurisdictions.  For the foregoing reasons, Defendants would request that Plaintiffs' Motion be denied.

Respectfully submitted,

RIGGS, ABNEY, NEAL, TURPEN,
 ORBISON & LEWIS


 /s/ Peter W. Brolick
Peter W. Brolick, OBA No. 17781
Kristopher E. Koepsel, OBA No. 19147
502 West Sixth Street
Tulsa, OK  74119-1010
(918) 587-3161
(918) 587-9708 (Facsimile)
pbrolick@riggsabney.com
kkoepsel@riggsabney.com

-and-

Frank M. Smith, Pro Hac Vice
FMS Lawyer, PL
9900 Stirling Road, Suite 226
Cooper City, FL 33024
(954) 985-1400
(954) 241-6947 (Facsimile)
frank.smith@fmslawyer.com
*Attorneys for Defendants*
*CAH Acquisition Company 7, LLC;*
*Rural Community Hospitals of America,*
*LLC; Empower H.M.S.; and Jorge Perez*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of March, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for Filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

/s/ Peter W. Brolick
Peter W. Brolick
