# EXHIBIT 2

**LEASE AGREEMENT**

THIS LEASE AGREEMENT ("Agreement") is made and entered into as of the 31st day of December, 2013, ("Execution Date") by and between **THE CITY OF PRAGUE, OKLAHOMA** ("City") and the **PRAGUE PUBLIC WORKS AUTHORITY**, an Oklahoma public trust created under the authority of and pursuant to the provisions of 60 Okla. Stat. §§ 176 *et seq.*, as amended ("Authority"), the address of both parties for purposes of this Agreement being 116 North Jim Thorpe Boulevard, Prague, Oklahoma 74864 and **CAH ACQUISITION COMPANY 7, LLC d/b/a Prague Community Hospital**, a Delaware limited liability company authorized to conduct business in Oklahoma ("Hospital"), the address of which is 1322 Klabzuba, Prague, Oklahoma 74864.

**WHEREAS**, the City is owner of the property upon which the Hospital sits and the building within which the hospital operates (collectively the "Hospital Property");

**WHEREAS**, the City and the Authority have determined that it is in the public interest to continue to lease the Hospital Property (as hereinafter defined) to Hospital ; and

**WHEREAS**, Hospital, having purchased the assets of the Hospital from the Prague Healthcare Alliance ("PHA") on October 13, 2008 and assumed PHA's lease with the City and Authority then in effect desires to enter into this successor Agreement which will assure Hospital's continued use and enjoyment of the Hospital Property.

**NOW, THEREFORE**, in consideration of the above premises and the mutual covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties covenant and agree as follows:

1. **Definitions.** The terms used in this Agreement are defined as follows:

    1.1   "Affiliate" shall mean any person, corporation, partnership, trust or other legal entity that, directly or indirectly, controls or is controlled by, or is under common control of any party to this Agreement. "Control" (and the correlative meaning of the terms "Controlled by" and "under common control of" means the possession, directly or indirectly, of the power to direct or cause the directions of the management and policies of such entity. For purposes of this definition, only the City and the Authority shall be deemed Affiliates of one another.

    1.2   "Agreement" shall mean this Agreement and include any schedules, exhibits or other documents attached hereto or incorporated by reference herein.

    1.3   "Authority" shall mean the Prague Public Works Authority, an Oklahoma public trust created under the authority of and pursuant to the provision of 60 Okla. Stat. §§ 176 *et seq.*, as amended.

    1.4   "CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time. The terms "disposal", "release" and "discharge" as used in this Agreement shall have the meanings set forth in CERCLA.

1

1.5   "City" shall mean the Oklahoma municipality of Prague, located in Lincoln County, Oklahoma.

1.6   "Commencement Date" shall mean the 1st day of August, 2012 or such other date as the parties mutually agree in writing.

1.7   "Confidential Information" shall mean the proprietary business information of the Hospital and the protected health information of its patients which shall include, without limitation, information relating to Hospital's business affairs, finances, properties, methods of operation, software, business processes, sources of and arrangements for procuring equipment and supplies and patient information, except that which (i) has become public knowledge without breach of this Agreement; (ii) has been disclosed by Hospital to others without substantial restriction on further disclosure; or (iii) was independently developed by the City or the Authority without the use of or reliance on any Confidential Information.

1.8   "Conditions Precedent" shall mean each and all of the matters set forth under Section 13 of this Agreement.

1.9   "Environmental Laws" shall mean all federal, state and local ecological, wetlands and other environmental laws and regulations, as amended from time to time, including, without limitation: (i) CERCLA; (ii) the Resource Conservation and Recovery Act;(iii) the Hazardous Materials Transportation Act; (iv) the Clean Air Act; (v) the Clean Water Act; (vi) the Toxic Substances Control Act; and (vii) the Safe Water Drinking Act.

1.10   "Hospital" shall mean the critical access facility owned by CAH ACQUISITION COMPANY 7, LLC d/b/a Prague Community Hospital and operated by Rural Community Hospital of America, LLC ("RCHA") on the Hospital Property.

1.11   "Hospital Property" shall mean the real property identified on Schedule 1.15 and all buildings structures, fixtures and other improvements thereon or hereafter constructed, erected or placed thereon.

1.12   "New Hospital Facility" shall mean a new critical access hospital to be built by the Hospital's owner, HMC/CAH Consolidated, Inc. ("Owner") to replace the existing facility.

1.13   "Rent" shall have the meaning provided in Subsection 4.1 of this Agreement as well as that defined in Subsection 3.3 when applicable.

2.   **Term.**

2.1   The term of this Agreement, unless earlier terminated as elsewhere provided herein, shall commence on the Commencement Date and shall expire at midnight on the fifth (5th) anniversary of the Commencement Date ("Term").

   2.1.1   Hospital agrees to continue to operate a critical access hospital on the Hospital Property or at the location of a new critical access facility for the term of this Agreement;

2.2   Notwithstanding anything to the contrary in this Agreement, if Hospital's Owner opens a New Hospital Facility during the term of this Agreement, this Agreement and its applicable provisions relating to the leasing of the Hospital Property by Hospital shall

immediately terminate upon the opening of such New Hospital Facility. At such time, all provisions of this Lease relating to the Hospital Property shall be of no further force and effect.

3. **Rent.** Except as otherwise set forth in this Agreement, during the Term of this Agreement, Hospital shall pay to Authority on a monthly basis in advance the sum of Three Thousand and no/100 Dollars ($3,000.00) per month as rent for the Hospital Property ("Rent"). The first such Rent payment shall be due on the Commencement Date and each subsequent payment shall be due on the tenth (10th) day of each succeeding month of the term of this Agreement. Rent for any partial month during the Term of this shall be prorated on a thirty (30) day basis. Rent which is not paid within fifteen (15) days after such Rent is due and payable shall be subject to a penalty of One Hundred Fifty & no/100 Dollars ($150.00) per month until paid.

4. **Hospital's Obligations.** In addition to its other obligations set forth in this Agreement, and subject to all of the terms and conditions of this Agreement, Hospital shall also have the following obligations:

   4.1   During the Term, but subject to all applicable terms, covenants and conditions of this Agreement, Hospital, except to the extent that it opens a New Hospital Facility, shall continuously use the Hospital Property to operate a critical access hospital in accordance with a license issued by the Oklahoma Department of Health. Additionally, Hospital may provide such other clinical and/or health care services on the Hospital Property as it deems appropriate, in its sole discretion, even after a New hospital Facility is built.

   4.2   Hospital shall cause to be adopted, implemented and enforced, such policies and procedures, rules and regulations that are in compliance with applicable laws, ordinances, rules and regulations of the state and federal governments.

   4.3   Hospital shall maintain and/or comply with all applicable and necessary to its operation as a critical access facility.

   4.4   Hospital, at its expense, shall be responsible for maintaining, repairing and or replacing, as necessary, during the term of this Agreement: (i) the HVAC system; (ii) the roof; (iii) the walls and structural elements of the Hospital Property; (iv) the parking lots; (v) the plumbing and sewers; and (vi) the electrical system. Hospital shall also be responsible for: (i) routine cleaning and maintenance; (ii) routine repairs due to normal wear and tear; (iii) routine maintenance of the electrical system; and (iv) maintain the landscaping of the Hospital Property.

   4.5   Except as otherwise provided in this Agreement, Hospital shall be responsible for payment of all taxes, assessments, excises, levies, license fees, permit fees, inspection fees and other authorization fees, whether general or special (including any interest and/or penalties thereon) which may be assessed, levied or imposed during and in relation to the Term, on or with respect to, or to be a lien upon Hospital Property or any part thereof for an occupancy or activity of the Hospital after the Commencement Date. Notwithstanding the foregoing, Hospital

shall be obligated to pay only such amounts as they become due from time to time within the Term, and any such amount relating to a period which is not within the Term shall remain solely payable by the City and Authority, as the case may be, including any penalties or interest thereon. To the extent that the Term commences on a date other than January 1st or terminates or expires on a date other than December 31st, any sums due under this provision shall be prorated between the Authority and the Hospital for any such calendar year in which such event occurs.

4.6 Hospital will be responsible for all public or private utility services used in connection with the operation of the Hospital on the Hospital Property during the Term, including, without limitation, water, electricity, gas, fiber optics and sewer.

4.7 Insurance.

    4.7.1 During the Term, Hospital shall maintain the following insurance policies:

        4.7.1.1 Insurance against direct physical loss or damage caused by any of the perils customarily insured under the standard fire insurance policy with broad form extended coverage, vandalism, and malicious mischief endorsements added covering the Hospital Property in an amount not less than the full insurable value on a replacement cost basis.

        4.7.1.2 Comprehensive general liability insurance with a combined single limit of at least $1,000,000.00 each occurrence providing coverage for bodily injury and property damage including loss of use of the Hospital Property arising out of the ownership, maintenance or use of such property with a $3,000,000.00 annual aggregate limit and a $1,000,000.00 "umbrella".

        4.7.1.3 Comprehensive automobile liability insurance with a combined single limit of at least $1,000,000.00 providing coverage for bodily injury and property damage liability with respect to all vehicles owned and/or operated by Hospital.

        4.7.1.4 Comprehensive professional liability insurance covering Hospital for the death, injury, loss or damage suffered by any patient during the examination, diagnosis treatment, care or stay of any patient at the Hospital with limits of at least $1,000,000.00 per occurrence and $3,000,000.00 annual aggregate.

        4.7.1.5 Workers' compensation insurance as required by the laws of the State of Oklahoma.

    4.7.2 In lieu of separate policies Hospital may maintain blanket or umbrella policies if such policies provide the same coverage required by the foregoing subsections. Any deductions on any such policy(s) shall be the sole responsibility of Hospital. Any deductible(s) on any such policy(s) shall be the sole responsibility of Hospital.

      4.7.3    In the event of any material loss or damage to the Hospital Property, Hospital shall timely submit a claim under the applicable insurance policy. As to loss or damage to the Hospital Property, Hospital shall keep the City and the Authority advised of the status of any such claim. Consistent with the terms of this Agreement, including Section 9.1 if applicable, to the extent that insurance proceeds from the applicable insurance policy(s) cover Hospital Property, such proceeds shall be used to repair or replace Hospital Property. In accordance with the terms of this Agreement, specifically and exclusively referring to this Subsection 4.7.3, Hospital shall list the City and Authority as additional insureds on all policies referenced herein.

5.    **Authority's and City's Obligations.** In addition to their obligations set forth elsewhere in this Agreement, the City and the Authority shall have the following obligations:

    5.1    During the Term of this Agreement and for so long as Hospital or any of its Affiliates or assignees operate a critical access facility, either on Hospital Property or as a New Hospital Facility , neither the City nor the Authority shall, directly or indirectly, at any location in Lincoln County, Oklahoma, offer or enter into any contract with any third party to operate any other hospital or other healthcare facility offering services similar to or competitive with those offered by Hospital or its assignee, as the case may be, pursuant to this Agreement. Notwithstanding the foregoing, nothing in this Agreement shall prevent the City or the Authority from owning or operating a nursing home, an assisted living facility or housing for senior citizens at any location in Lincoln County, Oklahoma, if Hospital at its current location or at the location of a New Hospital Facility does not or does not intend to offer such services.

    5.2    During the Term, Authority and City jointly and severally covenant that they will not encumber or allow to be encumbered in any manner any of the Hospital Property and that it will not claim or allow anyone acting under or for it or by its authority to claim any right or power to allow the same, or any part thereof, to be subjected to any mechanics' or materialmans' lien or any other lien without the prior written consent of Hospital, which shall not be unreasonably withheld.

    5.3    Neither the City nor the Authority shall initiate any action which impairs the tax status of the Hospital Property.

    5.4    Except as authorized in writing by Hospital or as required by law, court order or demand of a duly authorized regulatory agency, and to the extent either of the following parties possess or have access to Hospital's Confidential Information, the City and Authority shall keep confidential and shall not disclose to any third party any Confidential Information. In any case where the City or Authority is compelled by law, court order or demand of a duly authorized regulatory agency, Authority shall advise Hospital in advance of such requirement and shall permit Hospital to object, contest, intervene or obtain appropriate protection of such information prior to its disclosure, to the extent permitted by law.

6.    **Termination and Remedies.** In addition to such other termination rights as may be set forth elsewhere in this Agreement, the following shall constitute events of default ("Events of Default") under this Agreement:

6.1 The following are Events of Default by Hospital:

6.1.1 Failure to nonpayment of any amount due under this Agreement, which is not disputed within forty-five (45) days of receipt of written notice from Authority setting forth the details of such nonpayment; or

6.1.2 Failure to cure any other breach or noncompliance by Hospital within thirty (30) days of receipt of notice from Authority setting forth the details of such alleged breach or noncompliance, or within such longer time as is reasonably necessary based upon the nature of the alleged breach so long as Hospital has commenced and diligently pursues a cure for such breach.

6.2 The following are Events of Default by Authority:

6.2.1 Failure to cure any material breach or noncompliance by Authority with terms and conditions of this Agreement within thirty (30) days of receipt of notice from Hospital setting forth the details of such alleged breach or noncompliance, or within such longer time as is reasonably necessary based upon the nature of the alleged breach so long as Authority has commenced and diligently pursued a cure for such breach; or

6.2.2 Any exercise of the right of eminent domain by the City of Prague or the Authority which materially impairs the ability of Hospital to operate a critical access hospital on the Hospital Property.

6.3 In addition to and not in lieu of any rights of termination set forth in this Agreement, if the City or any public trust of which it is a beneficiary, in the exercise of its powers of eminent domain, or any other governmental entity takes a material portion of the Hospital Property which materially impacts the ability of Hospital to operate a critical access hospital on the Hospital Property at the time of such taking, Hospital shall have the right to terminate this Agreement. To the extent that any proceeds of any award of compensation resulting from such talking or damaging are for personal property owned by Hospital, such portion of any such award or compensation shall be the sole and exclusive property of Hospital and the balance of such award or compensation shall be the property of the Authority. If Hospital elects not to terminate this Agreement, any award or compensation shall be used by the Authority to forthwith repair or replace the critical access hospital on Hospital Property and to return the same to as near to as reasonably possible to the same condition it was in prior to such taking or damage, as the case may be.

6.4 Notwithstanding anything to the contrary in this Agreement, in no event may either party recover from the other party; regardless of the nature of the cause of action, whether in contract or in tort, any punitive or exemplary damages.

7. **Alterations, Improvements, Removals and Return.**

7.1 During the Term, and at its expense, Hospital may make any improvements or additions to the Hospital Property it deems reasonably necessary.

7.2 Upon termination or expiration of this Agreement, Hospital shall have a reasonable time, not to exceed forty-five (45) days to remove all of its personal property. Any property not removed within such period shall be deemed abandoned by Hospital.

8. **Damage and Destruction.** During the term of this Agreement, in case of any damage to or destruction of the Hospital Property or any part thereof, if the damage in Hospital's reasonable judgment, can be repaired so as to allow Hospital to resume full operations consistent with those conducted prior to the damage, Hospital shall, after having notified the Authority of its determination, promptly commence, after receipt of any insurance proceeds covering the Hospital Property, and timely complete the restoration, replacement or rebuilding ("Restoration") thereof as nearly as reasonably possible to its value, condition and character immediately prior to such damage or destruction, with such alterations and additions as may be made at Hospital's election pursuant to and subject to the terms of this Agreement. Rent shall be abated during any such repair period. If such Restoration is not complete within one hundred eighty (180) days ("Restoration Period") through no fault of Hospital or if there are insufficient insurance funds to complete such Restoration, Hospital may terminate this Agreement. If the damage to the Hospital Property is such that it is reasonably anticipated by Hospital that the repairs to the Hospital Property will not be completed during the Restoration Period, and Hospital will not be able to resume full operations under this Agreement, Hospital may discontinue operations under this Agreement declare the Agreement terminated, with adjustments and a final accounting of all Rents and any other amounts due to be made in accordance with the provisions set forth herein through the date of such termination. In the event Hospital terminates this Agreement in accordance with the terms and conditions set forth in this Section 8, all applicable insurance proceeds, to the extent such proceeds are actually received by Hospital, shall either be applied to the repair of the Hospital Property or tendered to the City and Authority prior to such termination.

9. **Hospital's Representations and Warranties.** Hospital warrants and represents the

    9.1 Hospital has all necessary power and authority to enter into and perform its obligations under this Agreement.

    9.2 This Agreement constitutes a valid and legally binding obligation of Hospital, enforceable against it according to its terms.

    9.3 The execution, delivery and performance of this Agreement by Hospital and consummation by it of all the transactions contemplated hereby do not violate any judicial or administrative decree, regulation or other restriction of any kind or character to which Hospital is a party.

    9.4 That as of the Commencement Date, Hospital has the necessary licenses and permits to operate a critical access hospital on the Hospital Property.

10. **Authority's and City's Representations and Warranties.** Authority and City as of the Commencement Date jointly and severally represent and warrant to Hospital as follows:

7

10.1 They have full and unrestricted power and authority to enter into and perform their respective obligations under this Agreement.

10.2 The execution and performance of this Agreement by them, and all acts required of them that are contemplated by this Agreement, are within their respective powers and authority.

10.3 This Agreement constitutes a valid and legally binding obligation of the Authority and City, enforceable against them in accordance with its terms.

10.4 The execution, delivery and performance of this Agreement by the Authority and City, their performance and their subsequent consummation of the transactions contemplated herein do not: (i) require the consent, waiver, approval, license or authorization of any person or public authority which has not already been obtained or which will be obtained no later than the Commencement Date; (ii) violate any judicial or administrative decree, regulation or any other restriction of any kind whatsoever to which the Authority or City is a party.

10.5 This Agreement has been duly approved by the appropriate governing board of both the Authority and the City in accordance with applicable law. A copy of the resolution approving this Agreement are attached as Exhibit __ and incorporated by reference.

10.6 This Agreement and its performance by both the Authority and the City, respectively, shall not, at any time, constitute or cause a breach or default of any of their respective obligations under any other agreement, indenture, lease, instrument or contract to which either is a party or is otherwise bound.

10.7 There are no actions, suits, proceedings or judgments pending or threatened against the Authority or City, or before or by any federal, state, municipal, or other governmental; department, commission, board, bureau, agency or instrumentality, that would have a materially adverse effect on the Hospital and its operation of a critical access hospital or the Hospital Property or that would constitute a lien or encumbrance on the Hospital Property.

10.8 As of the Commencement Date, the Authority and/or City has good and indefeasible title to the Hospital Property free and clear of any liens or encumbrances of any kind or nature.

10.9 Neither the Authority nor the City has any knowledge of any condition, fact or facts regarding the Hospital's Property, which will in any way interfere or conflict with: (i) Hospital's performance or ability to perform under this Agreement; (ii) Hospital's quiet enjoyment of the Hospital Property; or (iii) Hospital's operation of a critical access facility.

10.10 The persons signing on behalf of the Authority and the City, respectively, have the full authority to do so.

11. **Indemnification.**

11.1 Except to the extent indemnity is due Hospital by Authority in accordance with the following Subsection 11.2, and in addition to any other indemnifications set forth in this Agreement, Hospital shall indemnify, defend and hold the Authority and City harmless from and in relation to:

    11.1.1 Any damages or injuries sustained during the Term to or sustained by any person, persons or property while on the Hospital Property and caused by any fire, breakage or leakage on, upon or within the Hospital Property including, without limitation, reasonable attorney fees and court costs;

    11.1.2 Any and all injury, damage, loss, expense or claim, including, without limitation, reasonable attorney fees and court costs, arising during the Term relating to any third person, persons or their property, (but not any Affiliate of the Authority, while on, in or upon Hospital Property caused by the negligence, misconduct, actions or inaction of Hospital or a breach of this Agreement by Hospital, its employees or agents arising out of the use of Hospital Property by the Hospital and the operation of a critical access facility by the Hospital;

    11.1.3 Any and all loss, expense, damages or claims, including, without limitation, consequential damages, penalties, fines, liabilities, costs and expenses incurred by Authority and City or assessed against the Hospital Property by virtue of any claim or lien by any by any governmental unit or agency, or any third party, for cleanup costs as required by any federal or state environmental law relating to or arising out of any act, omission, discharge, disposal or release caused by Hospital during the Term.

11.2 Except to the extent indemnification is due by Hospital to Authority and/or City in accordance with this Section 11, Authority and City shall, jointly and severally defend, and hold Hospital harmless from, against and in relation to:

    11.2.1 Any damage, loss expense or claims, including, without limitation, reasonable attorney fees and costs, arising from or in relation to any breach of Authority's and/or City's obligations under this Agreement or from any acts or omissions of either, or any of their respective agents or representatives.

    11.2.2 Any and all damage, loss, expense or claims, including, without limitation, attorney fees and consequential damages, penalties, fines, liabilities, including, without limitation, cleanup and recovery costs, incurred by Hospital, or assessed against Hospital Property by virtue of any claim or lien by any governmental agency, or any third party for cleanup costs or other costs relating to any federal or state environmental law arising bout of any act, omission, discharge, disposal, release or other event occurring prior to the commencement date of the City's and Authority's prior lease with PHA, which Hospital assumed, and the termination or expiration of this Agreement.

12. **Conditions Precedent.**

    12.1 This Agreement shall be voidable by any party to this Agreement, without obligation or liability by any party, unless, on or before the Commencement Date, each of the following conditions have been met:

    12.1.1 No action, claim or demand shall have been initiated and no order, decree or action shall have been taken to invalidate, limit or prevent the full performance of this Agreement by either party.

    12.1.2 Approval of this Agreement by the City and the Authority in a form satisfactory to both parties.

    12.1.3 Each of the party's representations and warranties, as set forth in Section 10 herein, remain true and correct as of the Commencement Date.

    12.1.4 All actions required to be taken by any party to this Agreement have been fully performed, waived or otherwise satisfied.

13. **Miscellaneous.**

    13.1 Authority and City jointly and severally covenant that Hospital, upon paying the Rent as it comes due and upon performing complying with all covenants, agreements, terms and conditions of this Agreement on its part, shall not be hindered or molested by Authority or City or any Affiliate or other person in its enjoyment of the Hospital Property during the Term.

    13.2 Hospital may not assign this Agreement without the prior written consent of the Authority and City, which shall not be unreasonably withheld. The foregoing notwithstanding, Hospital may assign this Agreement the Authority's or City's consent to an Affiliate of Hospital or to a successor entity or subsidiary entity. Hospital may sublease any part of the Hospital Property or contract for the performance by others of operations or services on or in connection with the Hospital or Hospital Property for any lawful purpose without the consent of the Authority or City. However, with respect to any sublease or contract, Hospital shall remain fully obligated and responsible under this Agreement to the same extent as if such sublease or contract had not been executed.

    13.3 This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Oklahoma without giving effect to its conflict of laws provisions.

    13.4 If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of the other terms shall in no way be adversely affected by such holding.

    13.5 Any notice required or implied by this Agreement will be sufficient if given in writing by personal delivery, certified mail, return receipt requested or nationally recognized commercial courier to the persons and at the addresses listed below

or such other persons and addresses that one party may communicate to the remaining parties from time to time during the Term:

| | |
|---|---|
| If intended for Hospital: | Prague Community Hospital<br>Attn.: Joan Walters, CEO<br>1322 Klabzuba Avenue<br>Prague, Oklahoma 74864 |
| With a copy to: | Rural Community hospitals of America, LLC<br>Attn.: VP & Chief Compliance Officer<br>1100 Main Street, Suite 2350<br>Kansas City, Missouri 64105 |
| If intended for Authority: | The Prague Public Works Authority<br>Attn.: Jim Greff<br>116 North Jim Thorpe Boulevard<br>Prague, Oklahoma 74864 |
| If intended for City: | The City of Prague, Oklahoma<br>Attn.: Jim Greff<br>116 North Jim Thorpe Boulevard<br>Prague, Oklahoma 74864 |

13.6   Any waiver by a party of any breach of any provision of this Agreement shall not be construed as a waiver of any continuing or succeeding breach of such provision.

13.7   This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties and their respective permitted successors and assigns.

13.8   This Agreement may be executed in any number of counterparts, each of which is an original, but all of which constitute one instrument.

13.9   No party, other than those named herein, shall be a third party beneficiary of this Agreement or any rights, remedies or benefits.

13.10  The relationship of the parties hereto is that of lessor and lessee. and not agents, employers, employees or joint venturers. No party shall have the right to bind any of the other parties to any agreement or contract or to represent any authority or relationship contrary to this Subsection 13.10 except as otherwise expressly set forth in this Agreement.

13.11  The prevailing party in any action relating to this Agreement shall recover from the other parties, to the extent applicable, its reasonable costs and attorney fees incurred by such party.

13.12  No party shall be liable to the other form any delay in performance attributable to strikes, acts of God, intervening governmental restrictions or actions, fire, unavoidable casualty, terrorist attack or any other causes beyond the control of such party.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**CITY OF PRAGUE, OKLAHOMA**                **CITY OF PRAGUE, OKLAHOMA**

By: _____           By: _____
    Cliff Bryant, Jr, Mayor                    Joe Vorndran, City Attorney

**PRAGUE PUBLIC WORKS AUTHORITY**

By: _____
    Cliff Bryant, Jr, Mayor

**CAH ACQUISITION COMPANY 7, LLC**          **RURAL COMMUNITY HOSPITALS OF AMERICA, LLC**
**d/b/a Prague Community Hospital**

By: _____           By: _____
    Joan Walters, Hospital CEO, on behalf      Dennis Davis, Chief Legal Officer
    of **RURAL COMMUNITY HOSPITALS
    OF AMERICA, LLC,** authorized agent of
    Hospital

13