UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CITY OF PRAGUE, OKLAHOMA et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | )  Case No. CIV-19-89-G ) |
| CAH ACQUISITION COMPANY 7, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

Now before the Court is Plaintiffs'[1] Motion for Civil Contempt (Doc. No. 31) and Supplement thereto (Doc. No. 41), seeking to hold the "Hospital Defendants"[2] in contempt of the Court's Temporary Restraining Orders ("TROs" (Doc. Nos. 24, 40)). The Hospital Defendants have filed a Response (Doc. No. 46), and a hearing on the matter was held before the undersigned on March 5, 2019. Having considered the parties' argument and the evidence in the record, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion and finds certain Defendants to be in civil contempt.

*I.   Background*

The basic background facts are not disputed by the parties. Plaintiff City of Prague, Oklahoma, owns the real property upon which Prague Community Hospital (the

---

[1] (1) The City of Prague, Oklahoma; and (2) Prague Public Works Authority.

[2] (1) CAH Acquisition Company 7, LLC ("CAH 7"); (2) Empower H.M.S ("Empower"); (3) Jorge A. Perez; (4) Rural Community Hospitals of America, LLC ("RHCA"); and (5) HMC/CAH Consolidated, Inc.

"Hospital") sits and the building within which the Hospital is located. Since 2008, Plaintiffs have contracted with CAH 7 in order for CAH 7 to purchase Hospital assets and operate the Hospital as a licensed critical-access hospital. On December 31, 2013, Plaintiffs executed the most recent Lease Agreement with CAH 7; the lease signed therein expired on December 31, 2018. *See* Pet. (Doc. No. 1-7) at 5; Lease Agreement (Doc. No. 30-1).

CAH 7 is a Delaware limited liability company with two members: HMC/CAH Consolidated, Inc. ("HMC"), and Health Acquisition Company, LLC ("HAC"). Doc. No. 4. HMC is named as a Defendant in this lawsuit but has not answered Plaintiffs' pleading or otherwise appeared in this Court. *See* Order on Defs.' Errata (Doc. No. 49).[3] HAC is not a party to this lawsuit. CAH 7 is indebted to its lender on a note owned and held by HAC. Doc. No. 29, at 8; Nusbaum Aff. ¶ 7 (Doc. No. 29-1). Defendant Jorge Perez and Mr. Paul Nusbaum are members of HAC. Doc. No. 4.

Empower is the management company that operates CAH 7, including its human resources and accounting activities. *See* Doc. No. 19, at 2; Defs.' Resp. at 8; Perez Aff. ¶¶ 5, 9. Mr. Perez is a member and CEO of Empower. Doc. No. 5; Perez Aff. ¶ 3 (offered at hearing). RCHA was the management entity for the Hospital prior to Empower taking over that task in April 2017. Defs.' Resp. at 7-8; Doc. No. 46-5; Doc. No. 46-6; Perez Aff. ¶ 4.[4] Mr. Nusbaum is a member of RCHA. Doc. No. 6.

---

[3] Accordingly, as there is no indication in the record that HMC actively disregarded or was even aware of the Court's TROs, the Court declines to hold HMC in contempt at this time.

[4] At the March 5, 2019 hearing, local counsel for RCHA, accompanied by Mr. Nusbaum, argued that RCHA should not be held in contempt because RCHA no longer actively

Plaintiffs filed this lawsuit in state court on January 15, 2019, alleging that Hospital Defendants were breaching their Lease Agreement and causing irreparable harm by, among other things, failing to properly manage the Hospital, and asking that Hospital Defendants be restrained from terminating the provision of their services or taking any funds received that were related to the Hospital. *See* Pet. at 1-15. The state court entered Plaintiffs' requested TRO on January 16, 2019.

The lawsuit was removed to this federal court on January 31, 2019. Doc. Nos. 1, 1-12. After removal, Plaintiffs reurged their pending state-court requests for entry of an order of injunctive relief and for appointment of a receiver to assume operation of the Hospital. Doc. Nos. 12-1, 13-1.

On February 6, 2019, this Court engaged in a telephone conference with counsel for: (i) Plaintiffs; (ii) Defendants CAH 7, Empower, Mr. Perez, and RCHA (collectively, "the Managing Defendants"); and (iii) nominal Defendant WCS Corporation, Inc., Successor-by-Merger to CPP Wound Care #24 ("WCS"). Doc. No. 21. The following day, the Court entered its Initial TRO (Doc. No. 24), which memorialized all relevant parties' agreement to maintaining the terms of the TRO that had been issued by the state court, with some modifications.[5] The Initial TRO prescribed:

---

manages the Hospital. *See also* Doc. No. 46, at 7-8; Doc. No. 46-5; Perez Aff. ¶ 4. Although Plaintiffs' counsel disputed this assertion, Plaintiffs provided no testimony or evidence to contradict the evidence in the record reflecting that RHCA transferred its management duties to Empower in April 2017. At the hearing, Plaintiffs also waived any hearsay objection to the Court's consideration of Mr. Perez's affidavit. Accordingly, the Court declines to find that RHCA is in civil contempt at this juncture.

[5] Although the TRO issued by the state court remained in effect until this Court's modification was entered on February 7, 2019, *see* 28 U.S.C. § 1450, the Court limits its

> IT IS ORDERED that the Hospital Defendants, as well as their affiliates, officers, agents, employees, and assigns, are barred and enjoined: (i) from terminating or curtailing the existing services they are providing to Plaintiffs, to the Prague Community Hospital, and to the community; and (ii) from taking, using, or dissipating any funds received or to be received related to the operation of the Prague Community Hospital, including, but not limited to, those paid or payable by the Medicare and Medicaid programs and other payors, and instead are required to operate the Prague Community Hospital in the normal course of business until further order of the Court.
>
> IT IS FURTHER ORDERED that the Hospital Defendants shall ensure that a daily written report of the income and expenses of Prague Community Hospital is provided to Plaintiffs each day during the pendency of this Order. No payments shall be made by Prague Community Hospital by or through any Hospital Defendant to any owner, officer, agent, servant, employee, or attorney of any Hospital Defendant or of WCS Corp. during the pendency of this Order.
>
> IN ADDITION, all rights of Plaintiffs and the Hospital Defendants set forth in their Hospital Lease Agreement are reserved, and all deadlines therein continued, during the pendency of this Order.
>
> The terms of this Order shall remain in place until further order of the Court. *See* Fed. R. Civ. P. 65(b)(2), 65(d)(1).

Initial TRO at 1-2.

On February 14, 2019, Plaintiffs filed their Motion for Contempt, alleging that Hospital Defendants were violating the terms of the Initial TRO in several ways. *See* Pls.' Mot. Contempt (Doc. No. 31). On February 19, 2019, the Court held a hearing on the matter, at which counsel for Plaintiffs, the Managing Defendants, and WCS appeared. Doc. No. 39. Pursuant to these attorneys' express agreement and written provision of

---

contempt finding to compliance with the Initial TRO and the Extended TRO and declines to issue a finding as to whether any Defendant violated the state court's order.

4

additional negotiated terms, the Court on that same day entered the Extended TRO, which provides in relevant part:

> IT IS ORDERED that the Hospital Defendants, as well as their affiliates, officers, agents, employees, and assigns, are barred and enjoined: (i) from terminating or curtailing the existing services they are providing to Plaintiffs, to the Prague Community Hospital, and to the community; and (ii) from taking, using, or dissipating any funds received or to be received related to the operation of the Prague Community Hospital, including, but not limited to, those paid or payable by the Medicare and Medicaid programs and other payors, and instead are required to operate the Prague Community Hospital in the normal course of business until further order of the Court.
>
> IT IS FURTHER ORDERED that the Hospital Defendants shall ensure that a daily written report of the income and expenses of Prague Community Hospital is provided to Plaintiffs each day during the pendency of this Order. No payments shall be made by Prague Community Hospital by or through any Hospital Defendant to any owner, officer, agent, servant, employee, or attorney of any Hospital Defendant during the pendency of this Order.
>
> IN ADDITION, all rights of Plaintiffs and the Hospital Defendants set forth in their Hospital Lease Agreement are reserved, and all deadlines therein continued, during the pendency of this Order.
>
> Defendant CAH Acquisition Company 7, LLC, is to provide electronic bank viewing access to counsel for Plaintiffs on the US Bank account of CAH Acquisition Company 7, LLC.
>
> Defendant CAH Acquisition Company 7, LLC, shall take no steps to terminate its provider number with the Centers for Medicare & Medicaid Services ("CMS").
>
> The parties shall attempt to obtain authorization for and complete the transfer of Prague Community Hospital's CMS-provider number to the facility's new management entity by February 26, 2019.

Extended TRO (Doc. No. 40) at 1-2. The Extended TRO expires by its own terms at 11:59 p.m. on Monday, March 11, 2019, unless otherwise ordered by the Court. *See id.* at 2.

On February 26, 2019, Plaintiffs filed a Supplement to their contempt motion, alleging that Hospital Defendants were continuing to violate the Court's orders in multiple ways. Pls.' Suppl. (Doc. No. 41). The following day, the Court held a conference by telephone with all relevant counsel present. Doc. No. 42. During this conference, Plaintiffs made an oral motion for the temporary appointment of a receiver over CAH 7. The Court denied the motion but granted Plaintiffs leave to present additional evidence of any proposed receiver's qualifications. *See* Order (Doc. No. 43). Plaintiffs filed supplemental evidence on March 1, 2019. Doc. No. 45. On March 4, 2019, the Court granted the oral motion and ordered that Cohesive be appointed receiver over CAH 7 until further order of the Court. *See* Order of Mar. 4, 2019 (Doc. No. 47).

Defendants responded to the Motion for Contempt on March 4, 2019 (Doc. No. 46), and the next day the Court held a hearing on various pending matters, including the contempt motion. Again, counsel was present for Plaintiffs, the Managing Defendants, and WCS. Doc. No. 48. At this hearing, both parties were given the opportunity to present live testimony. Both parties declined and primarily relied upon their filings and the argument of counsel, although a few documents, and one affidavit by Mr. Perez, were offered to the Court.

II.     *Discussion*

"To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (citation omitted). Once the

plaintiff makes this showing, the burden shifts to the defendant "to show either that he had complied with the order or that he could not comply with it." *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008).

No Defendant has challenged the validity or specificity of the Court's TROs under Federal Rule of Civil Procedure 65 or otherwise. And the attorneys who represented CAH 7, Empower, and Mr. Perez at the time both participated in the parties' negotiation of proposed terms of the TROs, as discussed above, and were served with the TROs after entry, *see* LCvR 5.4(c). Accordingly, the Court finds that Plaintiffs have met their burden on these elements.

With respect to disobeying the order, Plaintiffs allege that Hospital Defendants violated the Court's TROs in multiple ways. The Court need not address all of those allegations and instead focuses upon Plaintiffs' undisputed contentions that the relevant Defendants: (1) provided only one written income-and-expense report to Plaintiffs; (2) failed to provide access to the US Bank account; and (3) by at least February 27, 2019, ceased to pay vendors, pay employees, and to otherwise manage the Hospital. *See* Pls.' Mot. Contempt at 7-9; Pls.' Suppl. at 7-11; Perez Aff. ¶¶ 6-8 (attesting that "Empower has been unable to fulfill its obligations" or "to pay employees, vendors or otherwise operate the hospital"); *id.* ¶ 10 ("After about February 7, 2019, hospital employees ceased communicating with Empower."); Defs.' Resp. at 7 ("[S]ince sometime in February, hospital employees . . . have had no communication with Empower.").

The Court concludes that each of these constitutes an act of noncompliance with its orders. Both TROs required "a daily written report of the income and expenses" of the

7

Hospital "each day during the pendency" of the relevant TRO. Initial TRO at 2; Extended TRO at 1-2. And the Extended TRO required that Defendant CAH 7 "provide electronic bank viewing access" on its US Bank account. Extended TRO at 2. And no matter what the parties had in mind when they proposed to the Court that Hospital Defendants continue to operate the Hospital "in the normal course of business," Initial TRO at 2; Extended TRO at 1, no reasonable definition of the phrase extends to the operators of a functioning hospital essentially abandoning the facility, ceasing all contact with the facility's employees, and leaving its staff and patients to fend for themselves.

The Court must next consider whether it was not possible for Defendants CAH 7, Empower, and Mr. Perez to comply with its orders. *See Ford*, 514 F.3d at 1051. These Defendants have offered no reasoned explanation for failing to provide daily written reports or bank-account access as ordered, and so the Court concludes that Plaintiffs have shown these Defendants' failure to comply, or to even "be reasonably diligent" in complying, with these aspects of the TROs. *Bad Ass Coffee Co. of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp. 2d 1252, 1256 (D. Utah 2000).

With respect to operating "in the normal course of business," Hospital Defendants argue through counsel that they were unable to continue managing the Hospital after the facility's state license was transferred to an entity associated with Plaintiffs on February 15, 2019. Defs.' Resp. at 5-7. They further argue that they were unable to continue to operate the Hospital due to CAH 7's and Empower's accounts being "frozen." Perez Aff. ¶¶ 7-8; Defs.' Resp. at 7. Even assuming that Hospital Defendants had offered evidence clearly establishing these events, and showing a reasoned connection between these events

8

and the three relevant Defendants' conduct with regard to the Hospital, which they have not done, Defendants' own belief regarding the effect of such incidents "is not a valid defense or excuse that would absolve them from their willful and knowing violation" of the Court's orders. *Cty. of Yadkin v. CAH Acquisitions Co. 10 LLC*, No. 5:15-CV-229-BO, 2015 WL 12803656, at *3 (E.D.N.C. June 19, 2015). At no point did any Defendant seek relief from the TROs or apprise the Court of an inability to comply with their terms, due to constraints on their finances or otherwise. "Had circumstances existed such that it would have been impossible for [Defendants CAH 7, Empower, and Mr. Perez] to operate the hospital safely . . . , the proper course would have been to petition for relief from the restraining order[s], not to merely disregard [them][.]" *Id.* Moreover, to the extent these three Defendants attempt to avoid a contempt finding by focusing upon the perceived shortcomings in Plaintiffs' underlying legal claims, "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948).

Thus, the Court finds "that each of the justifications for non-compliance claimed by [the three Defendants] are pretextual attempts to post-hoc rationalize their willful and knowing violation of a valid court order." *Cty. of Yadkin*, 2015 WL 12803656, at *4.

III.   *Finding of Contempt and Sanctions*

For the foregoing reasons, Plaintiffs have satisfied their burden to show by clear and convincing evidence that Defendants CAH 7, Empower, and Mr. Perez have been in knowing violation of the Initial TRO and the Extended TRO, both issued by this Court. *See F.T.C. v. Kuykendall*, 371 F.3d 745, 754 (10th Cir. 2004). The Court further finds that

these three Defendants have not proffered sufficient justification for their noncompliance and a finding of civil contempt is therefore appropriate. Plaintiffs' Motion for Contempt (Doc. No. 31) is therefore GRANTED IN PART and DENIED IN PART.

In a civil contempt proceeding, damages are remedial in nature and "intended to coerce compliance with a court's order or to compensate plaintiff for losses sustained." *Kuykendall*, 371 F.3d at 752; *Premium Nutritional Prods., Inc. v. Ducote*, No. 07-CV-2098-KHV, 2008 WL 2020390, at *4 n.1 (D. Kan. May 9, 2008); *see also Reliance Ins. Co.*, 159 F.3d at 1318. Within 30 days of the date of this Order, Plaintiffs shall submit to the Court proof of its damages for injuries resulting from these Defendants' noncompliance with the Court's order. Plaintiffs' request should include only those damages claimed to be the result of the relevant Defendants' acts of noncompliance with the Initial and Extended TROs, as found in this Order, and those attorney's fees and costs specifically related to seeking enforcement of the TROs through civil contempt proceedings. The Court will then make a determination as to the appropriate entry of compensatory sanctions. *See Kuykendall*, 371 F.3d at 754 ("[D]istrict court judges should require . . . proof of the amount of compensatory damages by a preponderance of the evidence.").

With this and the other pending matters being resolved by the Court's orders on this date, the underlying contract dispute between the parties may proceed in accordance with the applicable procedural rules. This case will be set for a status and scheduling conference on the Court's May 2019 docket.

IT IS SO ORDERED this 8th day of March, 2019.

_____
CHARLES B. GOODWIN
United States District Judge