UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CITY OF PRAGUE, OKLAHOMA et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. CIV-19-89-G ) |
| CAH ACQUISITION COMPANY 7, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

## **ORDER**

In March 2019, following briefing and hearings, the Court granted in part Plaintiffs' Motion for Civil Contempt (Doc. No. 31). In that Order, Plaintiffs were directed to submit their sanctions request and supporting evidence to the Court, and they have done so. This matter is now at issue.

I.   *The Court's Authority to Proceed*

Before addressing Plaintiffs' damages contentions, the Court first must address the impact, if any, of related ongoing bankruptcy proceedings on this Court's ability to enter contempt sanctions. Specifically, on March 8, 2019, the Court found that Defendants CAH Acquisition Company 7 ("CAH 7"), Empower H.M.S. ("Empower"), and Jorge A. Perez (collectively, "Hospital Defendants") had knowingly violated certain temporary restraining orders ("TROs") issued by the Court and were in civil contempt. *See* Civil Contempt Order (Doc. No. 52) at 9-10. On March 22, 2019, Plaintiffs filed a Suggestion of Bankruptcy (Doc. No. 59) reflecting that the previous day Defendant CAH 7 had filed for Chapter 11 bankruptcy in both the Eastern District of North Carolina and the Western District of

Oklahoma.  Plaintiffs thereafter informed the Court that Defendant CAH 7's bankruptcy proceedings in the Western District of Oklahoma had been transferred to the Eastern District of North Carolina.  Doc. No. 73, at 4.  The Court takes judicial notice that the CAH 7 bankruptcy proceedings remain ongoing as of this date.  *See In re CAH Acquisition Co. 7, LLC*, No. 19-01298-5-JNC (Bankr. E.D.N.C. filed Mar. 21, 2019).

As a threshold issue, the weight of authority holds that this Court "has jurisdiction to determine not only its own jurisdiction but also the more precise question [of] whether the proceeding pending before it is subject to the automatic stay" prescribed by 11 U.S.C. § 362(a)(1).  *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986) (internal quotation marks omitted); *accord SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14 (D.D.C. 2001).

As to whether the stay applies, the relevant statute provides that the filing of a bankruptcy petition stays "the continuation . . . of a judicial . . . action or proceeding against the debtor."  11 U.S.C. § 362(a)(1).  Multiple courts, however, "have held that the automatic stay does not bar orders to show cause or findings of contempt when necessary to uphold the dignity of a court order."  *Summit Fin. Res., L.P. v. Walthers Oil Co.*, No. 2:07-CV-949-TS, 2008 WL 183380, at *2 (D. Utah Jan. 18, 2008) (internal quotation marks omitted).  The facts of the instant case are similar to those in *US Sprint Communications v. Buscher*, where the U.S. District Court for the District of Kansas addressed "whether a bankrupt may be sentenced on a civil contempt citation after he has violated direct orders of the court" and answered in the affirmative:

> It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court.

*US Sprint Commc'ns v. Buscher*, 89 B.R. 154, 156 (D. Kan. 1988).

The Court finds this reasoning persuasive, as the Court has previously found Defendant CAH 7 and two of its codefendants to be in contempt of its orders, and the Court "has inherent power to ensure compliance" with those orders. *Bilzerian*, 131 F. Supp. 2d at 15. The Court finds that the assessment of sanctions set forth herein "is necessary to uphold the dignity of the Court" and is not precluded by the automatic-stay provision. *Summit Fin. Res.*, 2008 WL 183380, at *2.

II.     The Court's Contempt Findings

The factual background of this case is detailed in the Court's Civil Contempt Order and so will only be summarized here. This lawsuit was removed to this federal court on January 31, 2019. Doc. Nos. 1, 1-12. After removal, Plaintiffs reurged their pending state-court requests for entry of an order of injunctive relief and for appointment of a receiver to assume operation of the Hospital. Doc. Nos. 12-1, 13-1. On February 7, 2019, after engaging in a telephone conference with the relevant parties' counsel, the Court issued its Initial TRO (Doc. No. 24), which memorialized all relevant parties' agreement to

3

maintaining the terms of the TRO that had been issued by the state court, with some modifications.[1]

One week later, Plaintiffs filed a Motion for Contempt (Doc. No. 31) alleging that certain Defendants were violating the terms of the Initial TRO. Following a hearing (Doc. No. 42), the Court on February 19, 2019, entered its Extended TRO, which expanded the proscriptions and requirements of the Initial TRO and remained in effect by its own terms until 11:59 p.m. on March 11, 2019. *See* Extended TRO (Doc. No. 40).

On February 26, 2019, Plaintiffs filed a Supplement (Doc. No. 41), alleging that certain Defendants were continuing to violate the Court's TROs. Following submission of a Response from the relevant Defendants (Doc. No. 46) and a hearing (Doc. No. 48), the Court entered its finding of civil contempt on March 8, 2019. In its Civil Contempt Order, the Court found by clear and convincing evidence that the Hospital Defendants had knowingly violated the Initial TRO and the Extended TRO by: failing to provide a daily written report of the income and expenses of the Prague Community Hospital ("Hospital"); failing to provide electronic viewing access to a specified CAH 7 bank account; and failing to continue to operate the Hospital in the normal course of business. *See* Civil Contempt Order at 7-8. The Court further found that the Hospital Defendants had not proffered

---

[1] Although the TRO issued by the state court remained in effect until this Court's modification was entered on February 7, 2019, *see* 28 U.S.C. § 1450, the Court's finding of civil contempt was limited to evaluating compliance with its own orders and did not reach the issue of whether any Defendant violated the state court's order. *See* Civil Contempt Order at 3 n.5.

sufficient justification for their noncompliance with the Court's orders and that a finding of civil contempt was therefore appropriate. *See id.* at 8-10.

On June 10, 2019, Plaintiffs submitted their Notice of Damages with supporting documentation (Doc. No. 75). No Defendant has replied to this Notice despite being expressly provided the opportunity to do so (Doc. No. 76).

III.   Applicable Standards

"A district court has broad discretion in using its contempt power to require adherence to court orders." *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir. 1992) (internal quotation marks omitted). In a civil contempt proceeding, damages are remedial in nature and intended to (1) "coerce compliance with a court's order" and/or (2) "to compensate plaintiff for losses sustained." *Premium Nutritional Prods., Inc. v. Ducote*, No. 07-CV-2098-KHV, 2008 WL 2020390, at *4 n.1 (D. Kan. May 9, 2008); *accord O'Connor*, 972 F.2d at 1211. "In determining the measure of remedial relief, the court must bear in mind that '[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" *Markham v. Nat. States Ins. Co.*, No. CIV-02-1606-F, 2004 WL 3019309, at *2 (W.D. Okla. Dec. 27, 2004) (alteration in original) (quoting *FTC v. Kuykendall*, 371 F.3d 745, 765 (10th Cir. 2004)).

"[I]n a contempt action for compensatory civil sanctions, a jury trial is not required and damages need only be proven by a preponderance of the evidence." *Kuykendall*, 371 F.3d at 751. As seen in the procedural history outlined above, "this matter has proceeded step-wise, and at a measured pace, so as to afford [the Hospital Defendants] ample notice

5

of the basis upon which [they] may be sanctioned as well as an opportunity to be heard on the issues thus raised." *Markham*, 2004 WL 3019309, at 2 n.3 (citing *Kuykendall*, 371 F.3d at 754).

IV. Discussion

In their Notice, Plaintiffs seek both coercive and compensatory sanctions.

A. *Coercive Sanctions*

Coercive contempt sanctions "look to the future" and can "aid the plaintiff by bringing a defiant party into compliance with the court order." *Latrobe Steel Co. v. United Steelworkers of Am.*, 545 F.2d 1336, 1344 (3rd Cir. 1976). Contempt sanctions are civil and coercive rather than punitive where the contemnor is given the opportunity to purge the contempt by complying with the underlying order. *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 828 (1994).

Plaintiffs request two items of coercive sanctions. First, they seek payment of the $218,771.00 in Hospital expenses that the Court approved as reasonable and necessary costs advanced by the Receiver on April 12, 2019. *See* Doc. No. 70. The Court declines to award this sum, however. This money was not expended by Plaintiffs, but by the appointed Receiver in this action, and Plaintiffs have not shown they are entitled to such a windfall or that ordering such a payment will "coerce" the Hospital Defendants (who no longer control the Hospital) into compliance with any obligation. *See Bagwell*, 512 U.S. at 827 (noting that a civil contempt sanction is "for the benefit of the complainant" (internal quotation marks omitted)). Second, they request $5000.00 that was paid by Plaintiff City of Prague, Oklahoma, to Diagnostic Laboratory of Oklahoma, LLC ("DLO") on March 1,

2019, to prevent DLO from discontinuing its services to the Hospital due to the Hospital Defendants' nonpayment of bills owing. *See* Pls.' Notice at 8; *id.* Ex. 2 (Aaron Aff. ¶ 9 (Doc. No. 75-2)); *id.* Ex. 3 (City of Prague Purchase Order (Doc. No. 75-3)). The Court agrees that Plaintiffs should be reimbursed for the DLO payment but finds that this sum is more appropriately characterized as compensatory (as Plaintiffs alternatively argue).

### B. Compensatory Sanctions

Compensatory sanctions seek to "compensate the complainant through the payment of money for damages caused by past acts of disobedience." *Latrobe Steel Co.*, 545 F.2d at 1344. Where a sanction is compensatory, the amount of the fine must be based on actual losses incurred as a result of noncompliance with an order. *O'Connor,* 972 F.2d at 1211.

Plaintiffs have shown that they expended $5000.00 on the DLO payment, that this payment was made while the Extended TRO was in place, and that "this payment was necessary solely because" the Hospital Defendants were not "operat[ing] the Prague Community Hospital in the normal course of business" as required by the Extended TRO. Pls.' Notice at 8; Extended TRO at 1; Aaron Aff. ¶ 9; City of Prague Purchase Order at 1-2. Accordingly, Plaintiffs should be compensated for this expense by the Hospital Defendants.

As contemplated by the Court's Civil Contempt Order, Plaintiffs additionally seek attorney's fees and costs associated with the Contempt Motion and related proceedings. *See, e.g.*, *Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1091 (10th Cir. 2010).

With respect to attorney's fees, Plaintiffs seek $2065.00 for the services performed by Joseph Vorndran and $43,913.50 for services performed by attorneys and staff at

Christensen Law Group. *See* Pls.' Notice at 13; *id.* Ex. 4 (Vorndran Aff. (Doc. No. 75-4)); *id.* Ex. 5 (Tate Aff. (Doc. No. 75-5)); *id.* Ex. 6 (Rose Aff. (Doc. No. 75-6)). The Court finds that the hourly rates sought for all personnel are reasonable and that Mr. Vorndran's request should be granted in full. Regarding Christensen Law Group's request, the Court declines to include in its award: (1) a $300 charge incurred before the Initial TRO had been issued, *see* Tate Aff. Ex. A (Doc. No. 75-5) at 11; (2) multiple charges, totaling $1453.75, associated with seeking two extensions of time to file the required sanctions information, *see id.* at 44, 45, 46, 50, 52, 53; and (3) a $45.00 charge related generally to the lawsuit rather than to the Contempt Motion, *see id.* at 54. The Court otherwise approves of this request.

The Court finds that the process-server charge of $395.00 incurred in connection with the hearing of March 5, 2019, is an actual loss incurred that should be included in the sanctions award. *See* Pls.' Notice at 14; *id.* Ex. 7 (West Way Receipt (Doc. No. 75-7)).

### *C. Sanctions Award*

The Court finds that a civil compensatory sanction should be imposed against the Hospital Defendants "for the purpose of rectifying, at least in part, the effects of [these Defendants'] intentional subversion" of the Court's directives in this case. *Markham*, 2004 WL 3019309, at *8. Accordingly, a sanction in the amount of $49,574.75 is hereby assessed against Defendants CAH Acquisition Company 7, LLC, Empower H.M.S., and Jorge A. Perez, for the reasons set forth above and in the Court's March 8, 2019 Civil Contempt Order. These Defendants shall pay Plaintiffs this sum within 30 days of the date of this Order.

*D. Status of This Litigation*

With the pending contempt and receivership matters disposed of, there remain to be adjudicated Plaintiffs' pending legal claims as presented in their pleading. While the automatic-stay provisions of the Bankruptcy Code would generally apply to Defendant CAH 7, they would not necessarily halt proceedings as to the other Defendants in this action. *See Fortier v. Dona Anna Plaza Partners*, 1324, 1330 (10th Cir. 1984). In response to the Court's inquiry as to their requested course of action (Doc. No. 72), Plaintiffs have notified the Court that after conclusion of the proceedings on the Motion for Civil Contempt, they intend to seek dismissal of the remaining claims in this lawsuit. *See* Pls.' Resp. (Doc. No. 73) at 4-5; Fed. R. Civ. P. 41(a). No party has raised any objection or otherwise weighed in on this proposed course of action.

Accordingly, Plaintiffs are directed to file, within 21 days of the date of this Order, a motion seeking dismissal under Federal Rule of Civil Procedure 41(a)(2).

The three attorneys who previously represented the Hospital Defendants, *see* Withdrawal Order of Mar. 8, 2019 (Doc. No. 50), shall forward this Order to each of those Defendants and file proof of such mailing with the Court.

IT IS SO ORDERED THIS 11th day of March, 2021.

*[signature: Charles B. Goodwin]*
CHARLES B. GOODWIN
United States District Judge